940 So.2d 18 (2006)
Roy Lee CHANEY
v.
HOME DEPOT, USA, INC., and Billy Rosen.
No. 2005-CA-1484.
Court of Appeal of Louisiana, Fourth Circuit.
August 16, 2006.
*19 Gregory A. Dupuy, Clarence O. Dupuy, Jr., Dupuy & Dupuy, Metairie, LA, for Plaintiff/Appellant, Roy Lee Chaney.
Cornelius R. Heusel, Shelley M. Sullivan, Jones Walker Waechter Poitevent Carrere & Denegre, New Orleans, LA, for Defendant/Appellee, Home Depot U.S.A., Inc.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, Judge LEON A. CANNIZZARO, JR.).
LEON A. CANNIZZARO, JR., Judge.
The plaintiff, Roy Lee Chaney, filed suit against Home Depot U.S.A., Inc.,[1] alleging discrimination based on race in violation of the Louisiana Employment Discrimination Law, La. R.S. 23:301 et seq. Summary judgment was granted in favor of Home Depot and against Mr. Chaney. Mr. Chaney is now appealing that judgment.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
Background
Mr. Chaney began working for a Home Depot store in New Orleans as a seasonal employee in November 1996. He worked during the Christmas season selling Christmas trees, and he was paid at the rate of $7.25 an hour until he was laid off after the Christmas season. He subsequently returned to work as a full-time, permanent employee at the same Home Depot store in the gardening department in February 1997. Billy Rosen was the store manager at the Home Depot store while Mr. Chaney worked there.
Mr. Chaney filed suit against Home Depot and Mr. Rosen alleging that Home Depot and Mr. Rosen discriminated against him because of his race, which was African American. Mr. Rosen was Caucasian.
Discriminatory Action
Mr. Chaney alleged that he was subjected to numerous acts of racial discrimination. The alleged discriminatory actions are summarized below.
The Oil Bottle Incident
Mr. Chaney was hit on the head with a bottle of oil that was thrown at him by a co-worker, who was not African American. The assistant manager on duty at the time told Mr. Chaney that being hit with a bottle of oil should not hurt a big "dude" like Mr. Chaney. When Mr. Chaney told the assistant manager that he did not feel well and wanted to go to the hospital, the assistant manager told Mr. Chaney he could go to the hospital but did not offer to call an ambulance or to have Mr. Chaney driven to the hospital. Mr. Chaney drove himself to the hospital where he was treated.
Mr. Chaney contended that the assistant manager's actions discriminated against him based on his race, because when a Caucasian employee suffered from a leg cramp at a company picnic, an ambulance was called to transport that employee to a *20 hospital for treatment. Mr. Chaney further contended that he suffered racial discrimination, because he was required to take two drug tests because of the incident involving the oil bottle, but the employee who hit him with the bottle was not required to take any drug tests in connection with the incident and was not disciplined for throwing the bottle.
Racial Slurs and Epithets
Mr. Chaney alleged that he was subjected to the most vile, vulgar, and offensive racial epithets, comments, stereotyping, and jokes. He alleged that being continually belittled based on his race created a hostile working environment that ultimately resulted in his constructive discharge from his job.
Santa Claus Incident
Mr. Chaney alleged that when he played the part of Santa Claus for the Home Depot store, Mr. Rosen insisted that there was no time for Santa to hold the Caucasian children who visited Santa although the African American children who visited Santa were allowed to sit on his lap. Mr. Chaney also alleged that while he was playing the part of Santa Claus, Mr. Rosen tried to cause him to fall for the purpose of humiliating him in front of the children.
"Shit Award"
Mr. Chaney alleged, and Mr. Rosen confirmed in his deposition, that at a meeting of the Home Depot store employees a "shit award" was given to the gardening department where Mr. Chaney worked, because that department had performed poorly. The "award" was a toilet seat, and Mr. Chaney alleged that he was singled out to wear this "award" around his neck because of his race and that he was greatly humiliated by this. Mr. Chaney also alleged that he was subjected to degrading and disparaging comments about African Americans being "lazy" when his department won the "shit award." According to the deposition testimony of Mr. Rosen, the "shit award" was only given once, and was then discontinued.
Unequal Pay
Mr. Chaney alleged that he trained a Caucasian worker in the gardening department at Home Depot whose pay rate was $9.00 per hour, whereas Mr. Chaney's pay rate was $7.25 per hour at the time. Mr. Chaney alleged that the wage disparity was a result of racial discrimination.
Mr. Chaney also alleged that seasonal workers were paid at a lower pay rate than permanent workers at Home Depot. Mr. Chaney, however, continued to be paid at the same rate that he was paid as a seasonal employee after he became a permanent employee and did not receive a raise until he had been a permanent employee for almost a year. Additionally, Mr. Chaney alleged that Caucasian employees were evaluated on a regular basis for the purpose of determining whether they should be given raises. Mr. Chaney, however, received only one evaluation and one raise during his term of employment.
Investigation of Discriminatory Actions
Mr. Chaney alleged that the racist conduct to which he was subjected began when he was first employed as a seasonal employee and continued until he left the employment of Home Depot in July 1998. He did not, however, report the racist conduct until March 1998, when a human resources director, who was African American, was walking through the store one day. He then told the human resources director about the vulgar racist jokes and racial slurs to which he had been subjected at his job. Sometime in May of 1998, Mr. Chaney spoke to Tammy Esskew, a Home Depot employment practices manager, about the hostile working conditions. At approximately the same time that Mr. Chaney had spoken to Ms. Esskew about *21 his situation, she received an anonymous letter from a number of Home Depot employees complaining about Mr. Rosen's treatment of African American employees.
After receiving Mr. Chaney's complaints and the anonymous letter, Ms. Esskew conducted an investigation of the employees' complaints at the Home Depot store. As part of her investigation, Ms. Esskew interviewed store employees, including Mr. Chaney. When Ms. Esskew talked with Mr. Chaney, she told him that she would be investigating Mr. Rosen's conduct. Ms. Esskew also apologized for Mr. Rosen's behavior. After the investigation was concluded, Mr. Rosen's employment at Home Depot was terminated. The date of termination was July 1, 1998.
On June 24, 1998, Mr. Chaney submitted a letter of resignation to Home Depot, and he gave two weeks' notice of his departure. On July 7, 1998, he left his position at Home Depot.
Procedural History
Mr. Chaney filed the instant suit against Home Depot and Mr. Rosen in April 1999. Home Depot sought to remove the case to federal court, but the federal court judge remanded the case to state court. In September 2004, Mr. Chaney filed a motion to set the case for trial. Four months later, in January 2005, Home Depot filed a motion for summary judgment, which was granted. Mr. Chaney is now appealing that decision.

DISCUSSION
Standard of Review
Appellate courts review the granting of summary judgment de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Reynolds v. Select Props., Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. See also Indep. Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, 231.
A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). If the court finds that a genuine issue of material fact exists, then summary judgment must be rejected. Oakley v. Thebault, 96-0937 (La.App. 4 Cir. 11/13/96), 684 So.2d 488, 490. The burden of proof does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist. Id. At that point, if the party opposing the motion "fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact." La. C.C.P. art. 966(C)(2). Summary judgment should then be granted.
Assignments of Error
Mr. Chaney raised thirteen assignments of error in his brief, but they were not individually briefed. Although Rule 2-12.4 of the Uniform RulesCourts of Appeal provides that "[a]ll specifications of error must be briefed," and that "[t]he court may consider as abandoned any specification or assignment of error which has not been briefed," we will nevertheless consider whether the trial court erred in granting Home Depot's motion for summary judgment.
Applicable Law
La. R.S. 23:332(A) provides as follows:
A. It shall be unlawful discrimination in employment for an employer to engage in any of the following practices:

*22 (1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, or national origin.
(2) Intentionally limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee, because of the individual's race, color, religion, sex, or national origin.
Because this statute is similar in scope to the federal anti-discrimination prohibitions in Title VII of the Civil Rights Act of 1964,[2] "Louisiana courts have routinely looked to the federal jurisprudence for guidance in determining whether a claim has been asserted" under La. R.S. 23:332(A). Plummer v. Marriott Corp., 94-2025 (La.App. 4 Cir. 4/26/95), 654 So.2d 843, 848. Additionally, hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment. National R.R Passenger Corp. v. Morgan, 536 U.S. 101, 116 n. 10, 122 S.Ct. 2061, 2074 n. 10, 153 L.Ed.2d 106 (2002). Therefore, sexual harassment cases are instructive in deciding racial harassment cases.
Hostile Work Environment
To prevail in a hostile environment racial harassment action against an employer, the plaintiff must prove five elements:
(1) the employee belonged to a protected group;
(2) the employee was subjected to unwelcome harassment;
(3) the harassment was based on the race of the employee;
(4) the harassment affected a term, condition, or privilege of employment; and
(5) the employer knew or should have known of the harassment and failed to take proper remedial action. Brooks v. Southern Univ. and Agric. and Mech. Coll., 03-0231 (La.App. 4 Cir. 7/14/04), 877 So.2d 1194, 1220, writ denied, 04-2246 (La.11/19/04), 888 So.2d 208. At issue in the instant case is the fourth element that the plaintiff is required to prove.
Element of Proof
The fourth element that Mr. Chaney was required to prove, that a term, condition, or privilege of employment was affected, has been described as a "tangible employment action" in a number of cases involving hostile work environments. A "tangible employment action" constitutes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision *23 causing a significant change in benefits." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998). Mr. Chaney has alleged that he suffered a "tangible employment action" in the form of a "constructive discharge" from his job as a result of the actions of the store manager at Home Depot.
In Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998), the United States Supreme Court discussed an employer's liability for a hostile work environment caused by a supervisory employee, such as the Home Depot store manager. The U.S. Supreme Court stated:
An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.
524 U.S. at 777-78, 118 S.Ct. at 2278 (citation omitted). The Faragher case also holds that "[n]o affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." 524 U.S. at 808, 118 S.Ct. at 2293.
In the instant case Mr. Chaney's employment ended from what he has alleged was a "constructive discharge." Thus, we are presented with the issue of whether a "constructive discharge" constitutes a "tangible employment action" that would preclude Home Depot from using the affirmative defense set forth in the Faragher case. If a "constructive discharge" is a "tangible employment action," Home Depot could be held strictly liable for Mr. Rosen's behavior toward Mr. Chaney, if Mr. Chaney proved that he was subjected to a hostile work environment such that he was, in fact, constructively discharged from his job at Home Depot. If a "constructive discharge" is not a "tangible employment action," Home Depot is entitled to defend against Mr. Chaney's claims by using the affirmative defense described in the Faragher case. The U.S. Supreme Court, however, did not directly address in the Faragher case the issue of whether a "constructive discharge" was a "tangible employment action" that would deprive the employer of the affirmative defense made available to an employer whose supervisory employee had created a hostile work environment.
In Pennsylvania State Police v. Suders, 542 U.S. 129, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004), the United States Supreme Court set forth the requirements for proving that a "constructive discharge" has occurred in a hostile environment case. The plaintiff must first establish that discriminatory conduct in the workplace was so pervasive that it created a work environment that was abusive to the employee. Additionally, the plaintiff must show that the abusive working environment became so intolerable that the plaintiff's resignation qualified as a fitting response to the workplace environment. 542 U.S. at 133-34, 124 S.Ct. at 2347.
The Suders case specifically held that an employer may, however, defend against a claim of "constructive discharge" by showing *24 "both (1) that it had installed a readily accessible and effective policy for reporting and resolving complaints of . . . harassment, and (2) that the plaintiff unreasonably failed to avail herself of that employer-provided preventive or remedial apparatus." 542 U.S. at 134, 124 S.Ct. at 2347. The affirmative defense, however, is not available to an employer "if the plaintiff quits in reasonable response to an employer-sanctioned adverse action officially changing her employment status or situation, for example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she would face unbearable working conditions." Id.
In the instant case, there is no evidence in the record of "employer-sanctioned adverse activity." Mr. Chaney resigned from his job. He was not terminated, demoted, or transferred, and his pay was not reduced. Therefore, we find that Home Depot was entitled to assert the affirmative defense set forth in the Faragher and Suders cases in connection with its motion for summary judgment.
In the Faragher case, the U.S. Supreme Court discussed the employer's burden of proof in connection with the affirmative defense as follows:
While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.
524 U.S. at 778, 118 S.Ct. at 2279.
In the instant case the evidence in the record shows that Home Depot maintained a toll free telephone number to allow employees to make anonymous telephone calls to discuss work related problems. Notice of the number was provided in the employees' break room at the store where Mr. Chaney worked. Additionally, there was an employment practices manager, whom Mr. Chaney knew was available at the Home Depot store where he worked, to receive complaints of workplace harassment. Mr. Chaney admitted in his deposition that he had used the toll free line to report a theft incident involving an employee, but the first time he reported the allegedly harassing actions of Mr. Rosen was in March 1998, four months prior to his resignation. The evidence reflects that the complaint that was finally lodged against Mr. Rosen was immediately investigated by Home Depot, and Mr. Rosen was promptly terminated when the investigation was finished.
Based on the evidence in the record in connection with the motion for summary judgment, we find that the first element of the affirmative defense available to Home Depot, that Home Depot exercised reasonable care to prevent and correct harassing behavior promptly, was satisfactorily met. Similarly, we find that the second element of the affirmative defense, that Mr. Chaney unreasonably failed to take advantage of the preventive and corrective opportunities provided by Home Depot, was also met. Because Home Depot has demonstrated that it has a valid affirmative defense to Mr. Chaney's harassment action, and because Mr. Chaney has produced no countervailing evidence that would create a material issue of fact with respect to the *25 affirmative defense, we conclude that Mr. Chaney has not met his burden of proof regarding the fourth element that must be proven in a hostile work environment claim.
Burden of Proof
Based on the foregoing discussion, we find that Mr. Chaney has not met his burden of proof in connection with his allegations that he was subjected to a hostile working environment. Summary judgment was properly granted in favor of Home Depot on that part of his claim that was based on the alleged harassment that resulted in a hostile working environment.
Discrimination Claims
In addition to his claim that he was subjected to a hostile working environment, Mr. Chaney also alleged that he was subject to racial discrimination in violation of the Louisiana Employment Discrimination Law. Mr. Chaney alleged that he was (1) paid less than a Caucasian employee that he trained, (2) denied promotions, because he was evaluated only once to determine whether he was entitled to a raise, although Caucasian employees were regularly evaluated semiannually for that purpose, (3) required to drive himself to the hospital when he was injured, whereas a Caucasian employee who had been hurt was taken to the hospital by ambulance, and (4) subjected to drug testing when another employee, who was not African American but who hit him with an oil can, was not subjected to drug testing.
In the Plummer case, discussed above, this Court set forth facts that a plaintiff must prove by a preponderance of the evidence to establish a prima facie case of racial discrimination. This Court stated:
The elements of a prima facie case in a factual situation such as the one presented in the instant case are (1) the plaintiff is black; (2) he was qualified for the position; (3) he was discharged, either actually or constructively; and (4) the position remained open and was ultimately filled by a white male.
654 So.2d at 848. In the instant case, the fourth element could be replaced by other factors that demonstrate racial animus.
La. C.C.P. art. 966 provides that the burden of proof in a motion for summary judgment is with the party seeking the summary judgment. That article further provides, however, that if the party seeking the summary judgment will not bear the burden of proof at the trial, the party seeking the summary judgment is not required to negate all of the essential elements of the other party's claim or defense. Rather, the party seeking the summary judgment must only demonstrate to the court that there is an absence of factual support for one or more elements that the adverse party must prove. Id.
Based on the record before us, we find that Mr. Chaney has not demonstrated that he can prove at trial the elements required for a claim of racial discrimination. Although Mr. Chaney may or may not have been subjected to racial discrimination, he has not shown that he can establish the necessary elements to prove his claim.
Mr. Chaney made allegations that he was the victim of discrimination, but the only evidence, other than his own allegations, that he presented to show that he could prove his allegations by a preponderance of the evidence at trial was an affidavit of a Caucasian employee, who was trained by Mr. Chaney. Although the employee stated in his affidavit that Mr. Chaney trained him and that he made $9.00 an hour at the time he was trained, the affidavit is insufficient to demonstrate that Mr. Chaney can meet his burden of proof at trial.
*26 There is nothing in the affidavit regarding the work experience, education, or prior training that the Caucasian employee had, the job duties that he was required to perform at Home Depot, or whether the duties were comparable to those Mr. Chaney was expected to perform. The affidavit, without more, is insufficient to create a material issue of fact regarding whether Mr. Chaney was subject to discriminatory wage practices. When Mr. Chaney filed his motion to set his case for trial, he certified that the case was ready for trial, which would mean that discovery was complete. Thus, Mr. Chaney would not be offering additional evidence at trial to support his allegations. Additionally, as we stated in the Plummer case, "[m]ere conclusory statements or personal beliefs by an employee that he was discriminated against are not sufficient to prove his employer discriminated against him." 654 So.2d at 849. Therefore, we are constrained to find, as was the trial court judge, that Mr. Chaney will not be able to prove his case at trial and that summary judgment on the issue of discriminatory treatment was properly granted in favor of Home Depot.

CONCLUSION
After conducting a de novo review of the record in this case, we find no error in the trial court judgment. Therefore, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Mr. Chaney also sued Billy Rosen, the former manager at the Home Depot store where he worked, but that aspect of the case is not before us. Mr. Chaney alleged that the manager intentionally inflicted emotional distress on him.
[2] The federal law provides in relevant part at 42 U.S.C. § 2000e-2(a):

It shall be an unlawful employment practice for an employer
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.