SUSAN M. CHEHARDY, Judge.
| ¡.This is a suit by a collection agency against a former employee to enforce a non-competition agreement, in which the former employee reconvened with various claims, including a sexual harassment claim. The plaintiff appeals a judgment that awarded the former employee damages and attorney’s fees on the sexual harassment claim. We reverse in part, affirm in part, and render.
FACTS
Teri L. Gross[1] was hired by Newton & Associates (“Newton”) in July 1998 as a commercial debt collector. She was terminated in early September 1999 for excessive absenteeism. Shortly after her termination by Newton, Gross was employed by Alexander & Hamilton, Inc., a competitor of Newton.
Newton rapidly filed suit against Gross, seeking to recover $2,000.00 paid her as commissions that allegedly were not due her, as well as to enforce the noncompetition provisions of Gross’ employment agreement, which prohibited her from soliciting clients of Newton after her employment was terminated.
*69 Gross responded with a reconventional demand, asserting claims against Newton for violation of the Family and Medical Leave Act, hostile work ^environment, gender discrimination, sexual harassment, and intentional and/or negligent infliction of emotional distress.
After a bench trial, the district court dismissed most of both parties’ claims, but found in favor of Gross on her sexual harassment claim and awarded her damages of $5,000.00 plus attorney’s fees of $2,500.00. In ruling from the bench, the judge stated only that “the sexual harassment claim by Ms. Gross was warranted and had merit.”
Newton took a suspensive appeal. Gross has neither appealed[2], nor filed an answer to the appeal,[3] although she has filed an appellate brief in proper person. (Her attorney withdrew as counsel following the trial.)
Newton does not attempt to reinstate its claims dismissed by the trial court, but seeks only to have the award to Gross for sexual harassment reversed. Newton asserts the trial court committed legal error in finding that sexual harassment had been established for the following reasons: (1) Gross did not prove a pervasive and hostile work environment; (2) Gross did not prove that management failed to take prompt remedial action in addressing harassment complaints; (3) Gross’s factual allegations were uncorroborated by either documentary or testimonial evidence; and (4) the consistent and uncontradicted testimony demonstrated that management promptly responded on the two occasions that complaints of improper conduct were made. Further, (5) Gross’s complaints regarding a birthday party on office premises at which a stripper appeared were meritless, because Gross -testified she did not participate in or see the party, and had only a momentary fleeting glance of the stripper as she passed the claimant’s office, and management immediately | ¿halted the party even before complaint .was made, and prohibited any future repetition. '
LAW AND ANALYSIS
La.R.S. 23:332 prohibits intentional discrimination in employment. It provides in pertinent part:
A. It shall be unlawful discrimination in employment for an employer to engage in any of the following practices:
(1) Intentionally fail or refuse to hire ■ or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment, because of the individual’s race, color, religion, sex, or national origin.
Louisiana courts look to federal jurisprudence to interpret Louisiana discrimination laws, because they are derived in part from the federal law. Bustamento v. Tucker, 607 So.2d 532, 538 n. 6 (La.1992).
There are two types of sexual harassment, one based on a quid pro quo theory and the other based on a theory of a hostile working environment. Meritor *70 Savings Bank v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 2405, 91 L.Ed.2d 49 (1986).
Hostile environment harassment consists of verbal or physical conduct that has the effect of creating an intimidating, hostile, or offensive work environment. To prevail in a hostile environment harassment claim, the plaintiff must assert and prove that: (1) she belonged to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew' or should have known of the sexual harassment and failed to take proper remedial action ... Every act of harassment, although reprehensible, does not necessarily give rise to a hostile environment claim. To be actionable, the harassment must be sufficiently severe or pervasive as to alter the conditions of the victim’s employment and create an abusive, hostile environment. In general, hostile environment harassment is characterized by | (¡multiple and varied incidents of offensive conduct which have the cumulative effect of creating a hostile working environment for the employee thus victimized.
Lee v. Delta Air Lines, Inc., 00-1034 (La. App. 5 Cir. 1/30/01), 778 So.2d 1169, 1173.
At trial Gross claimed she was subjected to sexual harassment repeatedly over the course of her 14-month tenure at Newton, but she described only a few incidents. She claimed that some male employees kept obscene photographs as screensavers on their computers, or displayed on the walls. However, she gave no proof that she had complained to management about such a practice, and provided no corroboration of her claim. It was denied by all the other Newton employees who testified.
Gross complained that on her first day a fellow employee, Jim Bradshaw, was assigned to train her. She said he had been drinking and kept trying to get closer and closer to her, forcing her up against the side of her cubicle. After about 20 minutes, she ended the training and told Bradshaw she would train herself. She did not present evidence that she reported the incident to her supervisor.
Gross testified that whenever she and another employee, whom she knew only as Melissa, tried to use the fax machine, an employee named John Hearn would walk behind them and keep brushing against them. Gross did not testify that she complained of this behavior to management; nor did she call Melissa or anyone else to corroborate her story.
On one occasion, Gross testified, Hearn was drunk and had urinated/defecated on himself, and was walking around the office in that state. As she was using the fax machine he decided to rub up against her. She complained to her boss, Mike Rome, and he sent Hearn home within ten to fifteen minutes.
| fiGross testified that John Hearn made unwelcome advances and suggestive remarks to her at a Christmas party. However, another employee, Les Ledet, overheard him and told him, “Either leave her alone or leave the party,” and Hearn desisted from his behavior.
In July 1999 employees put on a surprise birthday party for Tom Barcelona, one of the collectors, which included a female stripper who stripped to the nude in Barcelona’s office and with whom Barcelona participated in overtly sexual behavior. Although counsel for Gross introduced into evidence a number of snapshots taken of the event, Gross testified she did *71 not view the show, but stayed in her office because she was disgusted by it. She claimed the only time she saw the stripper was when the stripper ran by her office as she was leaving the building. Gross complained she was unable to work while the party was going on, due to “screaming, yelling, and loud music.”
No other witnesses corroborated any of Gross’ testimony regarding the alleged incidents of harassment, and several contradicted her claim that she stayed at her desk and did not watch the stripper perform. Rather, they said she was watching the performance and laughing along with everyone else.
Bill Newton, owner of the company, testified that as soon as he discovered what was going on, he put a stop to the party, sent the stripper away immediately, and later sent a memo to all employees forbidding any such events in the future. His testimony was supported by several current or former Newton employees.
The witnesses who had worked at Newton all said that Bill Newton was an approachable boss whose door was always open, and who was willing to listen to their complaints. None of them recalled hearing or seeing any episodes of sexual discrimination or harassment.
^Applying the above-cited standards to the facts elicited at trial, we conclude the trial court erred in finding that Gross proved sexual harassment. We find that Gross failed to meet her burdens of proof. She failed to show that the incidents involving Bradshaw and Hearn at the fax machine were reported to management. The incidents involving Hearn’s soiled pants and his advances at the Christmas party were immediately redressed by management. Finally, the birthday party stripper incident was dispersed by Bill Newton as soon as he realized what was going on. In addition, according to Gross’s own testimony, her complaint about the incident was not that it was sexual harassment, but rather that she was unable to perform her job because of the noise and distraction. She testified that she was repulsed by the sight of the naked stripper running past her cubicle as she left, but this appears to have been an isolated incident.
DECREE
Accordingly, the judgment is reversed insofar as it awarded damages and attorney’s fees to Teri Gross, and judgment is rendered in favor of Newton & Associates, Inc. dismissing the sexual harassment claim. In all other respects the judgment is affirmed. The parties are cast with their own costs for this appeal.

REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.

. Newton calls the defendant "Terri” Gross in the title of the case and in its pleadings. However, Gross spells her first name "Teri,” so we adopt her own spelling of her first name.

. "An appeal is taken by obtaining an order therefor, within the delay allowed, from the court which rendered the judgment.” La. C.C.P. art. 2121.

. An appellee who desires to have the judgment modified, revised, or reversed in part or who demands damages against the appellant must file an answer to the appeal, stating the relief demanded, not later than 15 days after the return day or the lodging of the record, whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. La.C.C.P. art. 2133.