RONALD GAUTHREAUX

VERSUS

THE CITY OF GRETNA, BELINDA
CONSTANT, SOLELY IN HER CAPACITY AS
MAYOR FOR THE CITY OF GRETNA,
LANCE LAINE AND LL'S HANDYMAN
DUTIES

NO. 22-CA-424

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 826-992, DIVISION "P"
HONORABLE LEE V. FAULKNER, JR., JUDGE PRESIDING

March 29, 2023

**JUDE G. GRAVOIS**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and John J. Molaison, Jr.

**AFFIRMED**
 **JGG**
 **SMC**
 **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
RONALD GAUTHREAUX
Todd A. Hebert
Joshua L. Holmes

COUNSEL FOR DEFENDANT/APPELLEE,
THE CITY OF GRETNA AND BELINDA CONSTANT, SOLELY IN HER
CAPACITY AS MAYOR FOR THE CITY OF GRETNA
Leonard L. Levenson
Christian W. Helmke
W. J. LeBlanc, Jr.

**GRAVOIS, J.**

Plaintiff, Ronald Gauthreaux, appeals the trial court's July 18, 2022 judgment which sustained the peremptory exception of no cause of action filed by defendants, the City of Gretna and Belinda Constant, in her capacity as Mayor of the City of Gretna, and dismissed plaintiff's claims against these defendants with prejudice. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On April 8, 2022, plaintiff, Ronald Gauthreaux, filed a petition for damages, naming as defendants: the City of Gretna; Belinda Constant, in her capacity as Mayor of the City of Gretna; Lance Laine; and Mr. Laine's company, LL's Handyman Duties. In the petition, plaintiff, an employee of the City of Gretna since 2006, alleged that the City of Gretna and Mayor Constant discriminated against him and intentionally inflicted emotional distress upon him based on his sexual orientation. According to the petition, plaintiff met Mr. Laine, who was working at the time as a subcontractor for the City of Gretna, in February of 2021. Plaintiff claimed that during their encounters, Mr. Laine made several unsolicited comments about plaintiff's sexual orientation.

On March 31, 2021, Mr. Laine traveled with plaintiff to plaintiff's home during their lunch break to appraise a shelf installation job for plaintiff that he intended to perform through his company, LL's Handyman Duties. Plaintiff alleged that while they were in his vehicle, Mr. Laine "repeatedly gripped and pulled at his crotch area." This continued once they were at plaintiff's home. When Mr. Laine quoted plaintiff a price of $200.00 for the shelf installation job, plaintiff believed that based on this low price and Mr. Laine's behavior, Mr. Laine was either "making a serious sexual advance toward him, or harassing him about his sexual orientation." Plaintiff, wishing to clarify, asked Mr. Laine if he would "require a sexual favor as well." According to the petition, Mr. Laine responded

by saying that he was not gay. They returned to their work, and later Mr. Laine texted plaintiff to communicate that he would not be doing the shelf work at plaintiff's home. The next day, plaintiff was notified that Mr. Laine had filed a sexual harassment complaint against him, and he was suspended from work with pay. During the investigation of the claim that followed, plaintiff alleged that he had to answer "a barrage of embarrassing and humiliating questions about his sexual orientation and activities."

On April 22, 2021, plaintiff was terminated from his employment with the City of Gretna.[1] The reasons given in his separation notice included "misconduct, sexual harassment, dishonesty, prior sexual harassment incidents and insubordination." Plaintiff claimed, however, that the City of Gretna never previously asserted that he had engaged in any misconduct, sexual harassment, dishonesty, or insubordination. Further, to his knowledge, no female or non-LGTBQ+ male had ever been accused of sexual harassment and/or terminated because they "confronted a co-worker about that co-worker's sexually suggestive behavior toward them." He asserted that the City of Gretna had been aware that his sexual orientation was towards men, and the alleged incident occurred off the clock and not in the course and scope of either his or Mr. Laine's employment. He claimed that Mr. Laine's actions, the sexual harassment claim that followed, the humiliation caused by the City of Gretna's investigation, and his subsequent termination, inflicted severe emotional distress upon him. Plaintiff further alleged that he qualifies as a protected person under La. R.S. 23:332, which is entitled "Intentional discrimination in employment," due to his sexual orientation and the subsequent retaliatory termination. He specifically claimed that the City of Gretna,

---

[1] The original petition stated that plaintiff's employment was terminated on April 4, 2021. On June 14, 2022, plaintiff filed a first supplemental and amended petition for damages stating that he was terminated on April 22, 2021.

Mayor Constant, and Mr. Laine discriminated against him and inflicted emotional distress upon him due to the following:

1. Making sexually suggestive gestures, actions and comments with the intent to humiliate [plaintiff] based on his sexuality.

2. Accusing [plaintiff] of sexual harassment despite [him] being the victim through Mr. Laine's actions and comments, despite [him] ceasing all alleged sexual comments once Mr. Laine advised him that such comments were unwelcome, and despite all comments being made outside the course and scope of either party's employment.

3. Questioning [plaintiff] about his past sexual activities while "investigating" him about alleged sexual harassment he did not initiate and which occurred outside the course and scope of either party's employment.

4. Taking an adverse employment action against [plaintiff].

5. Using actions associated with [plaintiff's] sexual orientation as a reason to terminate his employment after his job had become obsolete.

6. Disclosing his termination and the false sexual harassment charge to other City employees and to community members beyond the City's staff.

In response, the City of Gretna and Mayor Constant filed peremptory exceptions of prescription[2] and no cause of action. Regarding the exception of no cause of action, defendants argued that although plaintiff alleges he is a protected person under La. R.S. 23:332, neither this statute nor any laws in Louisiana provide anti-discrimination protection in employment to persons based on their "sexual orientation." Accordingly, defendants argued that plaintiff has no cause of action based upon alleged employment discrimination due to sexual orientation.

In opposition, plaintiff argued that Louisiana courts have consistently looked to federal jurisprudence to interpret Louisiana anti-discrimination laws. Plaintiff asserted that the United States Supreme Court's decision in *Bostock v. Clayton Cnty., Georgia*, 207 L.Ed.2d 218, 140 S.Ct. 1731 (2020), found that Title VII of

_____

[2] Following the filing of plaintiff's first supplemental and amended petition, the exception of prescription became moot.

the Civil Rights Act of 1964, provides for the protection of employees who experience employment discrimination based on sexual orientation, and thus based on *Bostock*, La. R.S. 23:332 also provides such protection to him in this case.

Following a hearing on July 7, 2022, the trial court signed a written judgment on July 18, 2022 which sustained the City of Gretna and Mayor Constant's peremptory exception of no cause of action and dismissed plaintiff's claims against these defendants with prejudice. The trial court stated in the judgment that it was "beyond the purview of the Court to extend the express language and intent of Louisiana Revised Statute 23:332." This appeal followed.

## LAW AND ANALYSIS

The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. *Gaudet v. Jefferson Parish*, 12-707 (La. App. 5 Cir. 3/27/13), 116 So.3d 691, 693. The exception of no cause of action is triable on the face of the petition. No evidence may be introduced to support or controvert an exception of no cause of action. La. C.C.P. art. 931. Consequently, the court reviews the petition and accepts the well-pleaded allegations of fact in the petition as true. *Gaudet*, 116 So.3d at 693.

The mover has the burden of demonstrating that the petition fails to state a cause of action. The pertinent question is whether, in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's behalf, the petition states a valid cause of action for relief. *Pinegrove Elec. Supply Co., Inc. v. Cat Key Const., Inc.*, 11-660 (La. App. 5 Cir. 2/28/12), 88 So.3d 1097, 1100. Whether the plaintiff can prove the allegations set forth in the petition is not determinative of the exception of no cause of action. *Clulee v. St. Pierre*, 13-881 (La. App. 5 Cir. 5/14/14), 142 So.3d 83, 86.

In reviewing the judgment of the trial court relating to an exception of no cause of action, appellate courts should conduct a *de novo* review because the exception raises a question of law and the lower court's decision is necessarily based solely on the sufficiency of the petition. *Kitziger v. Mire*, 19-87 (La. App. 5 Cir. 9/24/19), 280 So.3d 302, 306, *writ denied*, 19-1858 (La. 1/28/20), 291 So.3d 1055.

On appeal, plaintiff argues that the trial court erred by not following *Bostock* and by interpreting La. R.S. 23:332 to find that it does not protect persons discriminated against in employment based on their sexual orientation.

Louisiana Revised Statute 23:332 governs intentional discrimination in employment and provides, in pertinent part:

A. It shall be unlawful discrimination in employment for an employer to engage in any of the following practices:

(1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to compensation, or terms, conditions, or privileges of employment, because of the individual's race, color, religion, sex, national origin, or natural, protective, or cultural hairstyle.

* * *

Because this statute is similar in scope to the federal anti-discrimination prohibitions in Title VII of the Civil Rights Act of 1964, "Louisiana courts have routinely looked to the federal jurisprudence for guidance in determining whether a claim has been asserted" under La. R.S. 23:332(A).[3] *Plummer v. Marriott Corp.*, 94-2025 (La. App. 4 Cir. 4/26/95), 654 So.2d 843, 848, *writ denied*, 95-1321 (La. 9/15/95), 660 So.2d 460; *Chaney v. Home Depot, USA, Inc.*, 05-1484 (La. App. 4 Cir. 8/16/06), 940 So.2d 18, 22, *writ denied*, 06-2286 (La. 11/22/06), 942 So.2d

---

[3] Title VII of the Civil Rights Act of 1964 provides that it is an unlawful employment practice to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1).

559; *See also King v. Phelps Dunbar, L.L.P.*, 98-1805 (La. 6/4/99), 743 So.2d 181, 187; *Bustamento v. Tucker*, 607 So.2d 532, 539 n.9 (La. 1992); *Newton & Associates, Inc. v. Gross*, 06-596 (La. App. 5 Cir. 11/28/06), 947 So.2d 67, 69.

We have found no state law that protects persons allegedly discriminated against in employment specifically because of their sexual orientation. Currently, La. R.S. 23:332 simply prohibits employment discrimination based on a person's biological sex. *See Louisiana Dep't of Justice v. Edwards*, 17-0173 (La. App. 1 Cir. 11/1/17), 233 So.3d 76, 81, *writ denied*, 17-2020 (La. 3/23/18), 239 So.3d 824. However, plaintiff argues that the United States Supreme Court's recent decision in *Bostock* expands the protections found in La. R.S. 23:332 to include persons who are allegedly discriminated against in employment because of their sexual orientation.

In *Bostock*, the United States Supreme Court considered whether an employer violates Title VII when it intentionally fires an individual employee based on their homosexuality or transgender status. The Court found that because discrimination on the basis of homosexuality or transgender status requires an employer to intentionally treat individual employees differently because of their sex, an employer who intentionally penalizes an employee for being homosexual or transgender also violates Title VII. 140 S.Ct. at 1734.

*Bostock* involved three cases in which long time employees were fired solely after it was learned that the employees were homosexual or transgender. *Id.* at 1737-38. The Court began its analysis by considering the plain meaning of the words of the Title VII statute that state that it is an unlawful employment practice to "discriminate against any individual … because of such individual's … sex … ." The Court first proceeded "on the assumption" that "sex" referred only to biological distinctions between male and female and found that the phrase "because of" in the language of the law referred to a "but-for" test. *Id.* at 1739.

From the ordinary meanings of the words at the time of the law's adoption, the Court determined that a straightforward rule emerges:

> An employer violates Title VII when it intentionally fires an individual employee based in part on sex. It doesn't matter if other factors besides the plaintiff's sex contributed to the decision. And it doesn't matter if the employer treated women as a group the same when compared to men as a group. If the employer intentionally relies in part on an individual employee's sex when deciding to discharge the employee—put differently, if changing the employee's sex would have yielded a different choice by the employer—a statutory violation has occurred.

> *Id.* at 1741.

The Court then found that based on the cases before it, "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." *Id.* This is because to "discriminate on these grounds requires an employer to intentionally treat individual employees differently because of their sex." *Id.* at 1742.

While plaintiff argues that the trial court erred in not relying on *Bostock* in interpreting La. R.S. 23:332, the majority opinion in *Bostock* states that the only law it considered in rendering its opinion was Title VII, specifically stating that "none of these other [federal or state laws that prohibit sex discrimination] are before us … ." *Id.* at 1753. Thus, although persuasive, our state courts are not bound by *Bostock*'s interpretation of Title VII in interpreting La. R.S. 23:332. As there is no binding federal or state law or jurisprudence on point, and because the legislature has not seen fit to amend La. R.S. 23:332 to specifically include protection from employment discrimination because of a person's sexual orientation,[4] we decline to extend *Bostock*'s reasoning to La. R.S. 23:332 to find that it allows for protection from employment discrimination because of a person's

---

[4] Notably, in the 2022 Louisiana Legislative Session, House Bill No. 439 proposed to add "sexual orientation" and "gender identity" to La. R.S. 23:332, but the bill was involuntarily deferred in committee. It appears that there is proposed legislation for the upcoming 2023 Louisiana Legislative Session that would amend La. R.S. 23:332 to include "sexual orientation" and "gender identity." *See* 2023 Louisiana House Bill No. 40.

sexual orientation. As such, we find that plaintiff's petition fails to state a cause of action against the City of Gretna and Mayor Constant.

## DECREE

Accordingly, for the foregoing reasons, the trial court's judgment which sustained the peremptory exception of no cause of action filed by the City of Gretna and Mayor Constant and dismissed plaintiff's claims against these defendants with prejudice is affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MARCH 29, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-424

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HON. LEE V. FAULKNER, JR. (DISTRICT JUDGE)
TODD A. HEBERT (APPELLANT)          CHRISTIAN W. HELMKE (APPELLEE)          LEONARD L. LEVENSON (APPELLEE)
W. J. LEBLANC, JR. (APPELLEE)

### MAILED

JOSHUA L. HOLMES (APPELLANT)          COLLEEN B. GANNON (APPELLEE)
ATTORNEY AT LAW                       DONNA R. BARRIOS (APPELLEE)
1631 ELYSIAN FIELDS AVENUE            ATTORNEYS AT LAW
SECOND FLOOR                          650 POYDRAS STREET
NEW ORLEANS, LA 70117                 SUITE 2750
                                      NEW ORLEANS, LA 70130