PAUL A. BONIN, Judge.
hAnn Hare, a former employee of defendant Paleo Data, Inc., complains on appeal that the trial court, because it failed to recognize the presence of genuine issues of material fact, erred in granting Paleo Data’s motion for partial summary judgment and in dismissing with prejudice her lawsuit against her former employer.[1] We review de novo the trial court’s grant of the defendant’s motion for summary judgment and conclude that the trial court did not err when it dismissed with prejudice Mrs. Hare’s claims for hostile work environment and constructive discharge. Because she has failed, effectively, to brief the issue of the dismissal of her claims for gender discrimination, we also affirm the trial court’s dismissal with prejudice of those' claims. As a result of the dismissal of all of her claims against Paleo Data, the trial court dismissed Paleo Data with prejudice as a party defendant in Mrs. Hare’s lawsuit, and we affirm that dismissal.
*383 We explain our reasoning in more detail below.
Before addressing Mrs. Hare’s assignments of error, we provide some background facts and discuss this matter’s procedural history. This matter arises out of a dispute between Mrs. Hare and Mr. Waterman that occurred on the premises of Paleo Data. Defendant Paleo Data is a micro-paleontological consulting firm that provides biostratigraphic services for the petroleum industry.[2] The company was incorporated in 1968 with William Campbell as its first president. One or more of the company’s paleontologist-employees have always owned the entirety of the company’s stock. Accordingly, when Mr. Campbell retired in 1993, Francis Plai-sance, a paleontologist-employee and shareholder, purchased additional shares to become Paleo Data’s next president. In 2003, Mr. Plaisance retired and sold his shares in the company to several of the remaining paleontologist-employees. Defendant Arthur Waterman, a paleontologist-employee and shareholder who began working for the company in 1978, purchased the majority of Mr. Plaisance’s stock and, thus, became its current president.
Paleo Data first employed Mrs. Hare in July 1989 as a secretary. By June 12, 2008, Mrs. Hare had taken on the role of Paleo Data’s office manager, and was responsible for, among other things, office bookkeeping, the payroll, and the maintenance of its computerized database of mi-cropaleontological reports and findings. Mr. Waterman became Mrs. Hare’s supervisor when he assumed Paleo Data’s presidency. The record indicates that Mr. Waterman and Mrs. Hare’s work relationship could be fairly characterized as sporadically contentious. Mrs. Hare, however, readily admits that over the course of their work relationship, Mr. |SWaterman regularly gave her raises, bonuses, and opportunities for professional growth.
The incident that sparked Mrs. Hare’s departure, and which forms the basis for this lawsuit, occurred on the morning of June 12, 2008. Specifically, the record indicates that Mike Center, a paleontologist employed by Paleo Data, was at the time in Florida attending to his ill mother. Mr. Center’s mother died on June 12, 2008. Mr. Center called Paleo Data’s offices on the morning of June 12, 2008, and informed Renee Hudson, a co-worker, about the funeral arrangements. Mr. Waterman asked Mrs. Hudson to give the information to Mrs. Hare. Mrs. Hudson passed along the information to Mrs. Hare after she arrived at work, who in turn looked up the obituary online and emailed the relevant details to the rest of Paleo Data’s employees. Upon arriving at the office, yet prior to checking his email, Mr. Waterman was informed by Hudson about Mr. Center’s mother. Thinking that she had failed to send the email, Mr. Waterman approached Mrs. Hare and demanded to know why she had failed to send him the requested email. Mrs. Hare insisted that he already knew all the information, and the two began to argue.
Although there is a factual dispute as to which of the two was shouting, the conversation ended with Mrs. Hare repeatedly cursing Mr. Waterman as a “f* * *ing liar.” *384 Mr. Waterman put his hands down on Mrs. Hare’s desk, insisted that she had no right to talk to him this way because he was in charge. Mrs. Hare responded by stating, “I’m f* * *ing out of here.” At this point, Mr. Waterman approached Mrs. Hare, placed his hands on her, asked her to calm down, and insisted that she stay. Mrs. Hare testified that Mr. Waterman grabbed her shoulders and shook her. jyMegan Porter Abbott testified that Mr. Waterman merely touched Mrs. Hare’s forearm. Mr. Waterman testified that he touched Mrs. Hare’s shoulders in an attempt to calm her down. Regardless, Mrs. Hare again cursed Mr. Waterman, brushed his hands away, and stormed out of the office. Although his initial response was to state, “If you leave now, don’t bother coming back,” Mr. Waterman later left voicemail and email messages apologizing for his failure to read the email from Mrs. Hare and asking her to return to work.
Mrs. Hare never returned to work, but instead filed the present lawsuit against Paleo Data and Mr. Waterman on January 23, 2009. Mrs. Hare asserted gender discrimination, hostile work environment, constructive discharge, and intentional infliction of emotional distress as well as assault and battery causes of action against the defendants. Mr. Waterman filed an exception of no cause of action, arguing that the plaintiff has no cause of action against him for gender discrimination damages, pursuant to La. R.S. 23:332, because he was not her employer as defined by La. R.S. 23:302. The trial court granted Mr. Waterman’s exception and signed a judgment on June 4, 2009, dismissing without prejudice all claims brought against him pursuant to Louisiana’s Employment Discrimination Law. The trial court also afforded Mrs. Hare sixty days to amend her petition in order to allege sufficient facts to state an employment discrimination claim against Mr. Waterman. Mrs. Hare, however, failed to amend her petition.
Mr. Waterman and Paleo Data each filed motions for summary judgment on January 18, 2011. Mr. Waterman’s motion sought the dismissal of plaintiffs assault, battery, and intentional infliction of emotional distress claims. Paleo Data’s motion sought the dismissal of Mrs. Hare’s gender-based employment discrimination claims.. The parties submitted the matter on briefs, and the trial | .¡rendered judgment on April 5, 2011, granting Paleo Data’s motion, but denying Mr. Waterman’s motion. Mrs. Hare filed a timely motion for devolutive appeal on June 3, 2011, seeking the reinstatement of her hostile work environment, constructive discharge, and gender discrimination claims. On November 30, 2011, this Court ordered the parties to show cause why the appeal should not be dismissed because the trial court’s judgment: 1) is a partial summary judgment which had not been designated as final by the trial court; and 2) has no decretal language describing the relief granted to Paleo Data. In response to this Court’s order, the parties petitioned the trial court to amend the judgment. See La. C.C.P. art. 1915 B. See also Favrot v. Favrot, 10-0986, p. 5 (La.App. 4 Cir. 2/9/11), 68 So.3d 1099, 1103—1104; Johnson v. Mount Pilgrim Baptist Church, 05-0337, p. 3 (La.App. 1 Cir. 3/24/06), 934 So.2d 66, 67 and Lalla v. Calamar, N.V., 08-0952, p. 6 (La.App. 4 Cir. 2/11/09), 5 So.3d 927, 931.
The trial court acceded to the parties’ request under La. C.C.P. art. 1951 and amended the judgment accordingly, to where it now clearly: 1) grants Paleo Data’s motion for summary judgment on Mrs. Hare’s claims for hostile work environment, constructive discharge, and gender discrimination; 2) dismisses Mrs. Hare’s petition against Paleo Data with *385 prejudice; and 3) denies Arthur Waterman’s motion for summary judgment with respect to Mrs. Hare’s claims against him for assault, battery, and intentional/negligent infliction of emotional distress.[3] The amended judgment is, accordingly, a partial final judgment pursuant to La. C.C.P. art. 1915 A(l) because it dismisses with prejudice Paleo Data from RMrs. Hare’s suit. In the interest of judicial economy, we permitted the parties to supplement the record with the amended judgment. We affirm the trial court’s judgment in favor of Paleo Data, and now explain our reasoning in the following Parts.
II
In this part, we discuss the law governing a compound hostile work environment/constructive discharge claim brought pursuant to La. R.S. 23:332. Although Louisiana is an at-will employment state, federal and state law contain several exceptions to that general rule. Both federal and Louisiana law, for example, prohibit employers from taking adverse employment actions based upon certain “protected” characteristics, such as race, gender, age, national origin, or religion. The statutory source for such claims can be found in La. R.S. 23:332 A, which provides as follows:
A. It shall be unlawful discrimination in employment for an employer to engage in any of the following practices:
(1) Intentionally fail or refuse to hire or to discharge any individual, or otherwise to intentionally discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment, because of the individual’s race, color, religion, sex, or national origin.
(2) Intentionally limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee, because of the individual’s race, color, religion, sex, or national origin.
Because this statute is similar in scope to the federal anti-discrimination prohibitions in Title VII of the Civil Rights Act of 1964, “Louisiana courts have routinely looked to the federal jurisprudence for guidance in determining whether a |7claim has been asserted” under La. R.S. 23:332 A. Plummer v. Marriott Corp., 94-2025 (La.App. 4 Cir. 4/26/95), 654 So.2d 843, 848. Penn. State Police v. Suders, 542 U.S. 129, 146-147, 124 S.Ct. 2342, 2354, 159 L.Ed.2d 204 (2004), held that Title VII encompasses employer liability for a constructive discharge and discussed the burden of proof applicable to compound hostile work environment/constructive discharge claims accordingly:
The constructive discharge here at issue stems from, and can be regarded as an aggravated case of, sexual harassment or hostile work environment. For an atmosphere of sexual harassment or hostility to be actionable ... the offending behavior “must be sufficiently severe or pervasive to alter the conditions of *386 the victim’s employment and create an abusive working environment.” A hostile-environment constructive discharge claim entails something more: A plaintiff . who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign. (Citations omitted.)
We will now examine in more detail the Louisiana jurisprudence applicable to both aspects of Mrs. Hare’s compound claim.
A
In order to state a claim for a hostile work environment, Mrs. Hare has the burden of proving that: 1) she belongs to a protected group; 2) she was subjected to harassment; 3) the harassment was motivated by discriminatory (gender) animus; 4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take proper remedial action. Brooks v. Southern University and Agric. and Mech. College, 03-0231, pp. 45-46 (La.App. 4 Cir. 7/14/04), 877 So.2d 1194, 1220. The notice element, however, is not required in a hostile environment case where it is 18alleged, as here, that the employee’s supervisor committed the alleged harassment. Nash v. Electrospace System, Inc., 9 F.3d 401, 405 (C.A.5 1993).
In order to prevail against Paleo Data’s hostile workplace motion for summary judgment, Mrs. Hare was compelled to show a genuine issue of material fact as to whether the conduct was so hostile and abusive that a reasonable person would have been offended by it and also that she, subjectively, actually was offended. Sears v. Home Depot, USA, Inc., 06-0201, p. 18 (La.App. 4 Cir. 10/18/06), 943 So.2d 1219, 1232. In determining whether a work environment is objectively hostile or abusive, all circumstances must be analyzed, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee’s work performance. Sears, 06-0201, p. 18, 943 So.2d at 1232.
Furthermore, Mrs. Hare must demonstrate that the conduct was so egregious as to alter the conditions of employment and destroy equality in the workplace. Id. Likewise, a lack of an objective offense that results in discriminatory changes in the terms and conditions of employment militates against there being evidence of a subjective offense. Sears, 06-0201, p. 19, 943 So.2d at 1232.
B
In order to prevail in her claim that her alleged constructive termination was gender-based, and thus in violation of La. R.S. 23:332, Mrs. Hare must have first established that discriminatory conduct in the workplace was so pervasive that it created an environment abusive to the employee. Penn. State Police, supra. In order to prevail on the constructive discharge aspect of her claim, Mrs. Hare must next prove that the working conditions to which she was subjected were so difficult [9or unpleasant that a reasonable person in her shoes would have felt compelled to resign. See King v. Phelps Dunbar, L.L.P., 01-1735, p. 10 (La.App. 4 Cir. 4/2/03), 844 So.2d 1012, 1019. That is, Mrs. Hare must demonstrate that the abusive environment was so intolerable that resignation qualified as a fitting response. Penn. State Police, supra. The Supreme Court gave as examples a humiliating demotion, extreme cut in pay, or a transfer to a position in which the employee would face “unbearable working conditions.” Id. The intolerable conduct must be of a *387 greater severity or pervasiveness than the minimum required to prove a hostile working environment. Plummer v. Marriott Corp., 94-2025 (4/26/95), 654 So.2d 843, 849. A single isolated instance of employment discrimination is insufficient as a matter of law to support a finding of constructive discharge. Id. Thus, a plaintiff alleging a constructive discharge must show some aggravating factors, such as a continuous pattern of discriminatory treatment. Francois v. Acadiana Sec. Plus, Inc., 07-1112, p. 5 (La.App. 3 Cir. 2/13/08), 976 So.2d 809, 813.
Ill
In this part, we set out the now-canonical standard governing motions for summary judgment. It is axiomatic that appellate courts review the granting of summary judgment de novo under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Chaney v. Home Depot, USA, Inc., 05-1484, pp. 5-6 (La. App.8/16/06), 940 So.2d 18, 21. “A summary judgment may be rendered disposi-tive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of summary judgment does not dispose of the entire ease.” La. C.C.P. art. 966 E. “[A] motion which shows that there is no genuine issue as to material |infact and that the mover is entitled to judgment as a matter of law shall be granted.” La. C.C.P. art. 966 C(l). “The burden of proof remains with the movant.” La. C.C.P. art. 966 C(2). “However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.” Id. “Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” Id.
IV
In this part, we examine Mrs. Hare’s argument that the trial court improperly dismissed her hostile work environment claim. To reiterate, Mrs. Hare must prove the following elements in order to establish a hostile work environment claim: 1) she belongs to a protected group; 2) she was subjected to harassment; 3) the harassment was motivated by discriminatory (gender) animus; 4) the harassment affected a term, condition, or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take proper remedial action. Brooks, 03-0231, pp. 45-46, 877 So.2d at 1220. There is no dispute that Mrs. Hare has met the first element. Paleo Data argues, however, that Mrs. Hare cannot establish that she was subject to gender-based harassment.[4]
I,,Mrs. Hare testified that Mr. Waterman was often impatient, a micromanager, distrustful, and frequently moody. Further, Mrs. Hare stated that Mr. Waterman would sporadically speak sternly, yell, and get in the face of both Donna Lacoste and *388 herself when he would become cross about some matter. Mrs. Hare explained that Mr. Waterman would raise his voice, and speak in an irritated tone, but that it was not “like Saints game yelling type thing or yelling at your children really loud, but just enough” to where it made her upset. Mrs. Hare also testified that Mr. Waterman treated her in this fashion for the entirety of her employment at Paleo Data, and that his actions would often cause her to go into the bathroom to cry. Mrs. Hare, however, could not state how often Mr. Waterman acted in this fashion. Mrs. Hare further testified that Mr. Waterman would, from time to time, speak in this way towards “everyone” else in Paleo Data’s offices, and testified to seeing both male and female employees spoken to in this manner.
Mrs. Lacoste testified that while Mr. Waterman could be “high strung,” he only raised his voice, and spoke in a stern tone towards her on one or two occasions. Mrs. Lacoste further noted that Mr. Waterman never yelled at her. On the other hand, Renee Hudson, a part-time lab technician who was promoted to assistant lab manager under Mr. Waterman’s management, testified that Mr. Waterman did not micro manage. Mrs. Hudson, moreover, testified that she never observed Mr. Waterman behave rudely or yell. Mrs. Hudson also noted that Mr. Waterman treated Paleo Data’s female employees with deference and respect. Mrs. Hudson further noted that no other employee complained to her about Mr. Waterman’s behavior. Mrs. Hudson additionally noted that she never observed Mr. Waterman act rudely towards Mrs. Hare, though .she did observe the converse. 112In fact, Mrs. Hudson testified that, in her opinion, Mr. Waterman was very tolerant of Mrs. Hare.
Ryan Weber, a paleontologist and former Paleo Data employee, testified that Mr. Waterman was a good mentor and treated the other paleontologists with respect. Mr. Weber further testified that he never observed Mr. Waterman yell at Mrs. Hare, and that Mr. Waterman treated her with respect. Indeed, Mr. Weber was aware of no tension between Mr. Waterman and Mrs. Hare. Similarly, Norman Vallette, a paleontologist and Paleo Data shareholder, testified that he never observed, or heard about, Mr. Waterman losing his temper after Mr. Waterman assumed the role of Paleo Data’s president. Moreover, Mike Center testified that he never witnessed Mr. Waterman raise his voice to either Mrs. Hare or Mrs. Lacoste, though he did recall Mr. Waterman yelling at him once and at Mr. Vallette once or twice. Megan Porter Abbott, Mrs. La-coste’s former assistant, testified that she never saw Mr. Waterman lose his temper. Lastly, Francis Plaisance testified that while he was president, he had received some complaints, which he characterized as minor, about Mr. Waterman acting rudely towards .coworkers, and that he observed Mr. Waterman yell at co-workers. Mr. Plaisance noted that he might hear Mr. Waterman raise his voice once a month. Mr. Plaisance explained Mr. Waterman’s behavior: “I know that pressure was a problem for him. If he was involved in a project and had several telephone calls, that he would become upset, and then the next problem that came up, he might fuss about.” Mr. Plaisance also testified that Mr. Waterman would yell at both male and female co-workers. Although Mr. Plaisance observed Mr. Waterman yell at Mrs. Hare, it did not appear to him that Mrs. Hare was afraid of Mr. Waterman.
11sIn light of the foregoing, it appears that Mrs. Hare has raised a genuine issue of material fact as to whether she was subjected to harassment. Although the remainder of the witnesses testified other *389 wise, Mrs. Hare stated that on some days Mr. Waterman could be moody, yell at, and get in the face of, Mrs. Lacoste and herself. Further, Mrs. Hare testified that she did not observe Mr. Waterman treat male co-workers in a similar fashion. Thus, there appears to be a genuine issue of material fact as to whether Mrs. Hare was subject to harassment. It does not appear, however, that Mrs. Hare can establish that Mr. Waterman’s actions were motivated by discriminatory animus. Simply put, the record indicates that Mr. Waterman could be equally moody and cranky with co-workers of either gender. Even if one accepts Mrs. Hare’s testimony as true, the evidence does not support an inference that Mr. Waterman’s treatment of Mrs. Hare was motivated by a discriminatory animus. Thus, Mrs. Hare has not raised a genuine issue of fact on this issue, and it does not appear that she can prove Paleo Data’s liability for hostile work environment damages.
V
In this part, we examine Mrs. Hare’s assertion that the trial court erred when it dismissed her claim for constructive discharge. Mrs. Hare claims that she was constructively discharged on June 12, 2008, when Mr. Waterman put his hands on her. We have already concluded that the trial court properly granted the defendants’ motion for summary judgment on Mrs. Hare’s hostile working environment claim. Given Mrs. Hare’s inability to establish that portion of her compound claim, we are compelled to affirm the trial court’s dismissal of her constructive discharge claim given the clear dictates of Penn. State Police, supra, and Plummer, 94-2025, 654 So.2d at 849. At least one Louisiana court of appeal, |14echoing Penn. State Police, has ruled that a claimant’s failure to prove that she was subjected to a hostile work environment necessitates a finding that she failed to satisfy her burden of proof in a claim of constructive discharge because a finding of a hostile work environment is a precursor to a finding of constructive discharge. Francois, 07-1112, p. 5, 976 So.2d at 813.
Without condoning what occurred in this instance, we find that the conduct about which Mrs. Hare complains insufficient to constitute a constructive discharge under the circumstances. Further, we note that the trial court denied Mr. Waterman’s motion for summary judgment on Mrs. Hare’s claims for assault, battery, and intentional infliction of emotional distress. Mrs. Hare, therefore, is not without recourse in the event that she is able to meet her burden of proving these tort causes of action. Accordingly, we conclude that the trial court did not err when it granted Paleo Data’s motion for summary judgment on the constructive discharge portion of Mrs. Hare’s compound claim.
VI
In this part, we briefly examine Mrs. Hare’s claim that the trial court erred when it dismissed her claim for gender discrimination. In order to establish a claim for employment discrimination pursuant to La. R.S. 23:332, a claimant must establish the following elements: 1) she was a member of a protected class; 2) she was qualified for the position; 3) she suffered an adverse employment action; and 4) similarly situated employees outside the protected class were treated more favorably. Knapper v. Hibernia National Bank, 09-1036, p. 7 (La.App. 4 Cir. 9/8/10), 49 So.3d 898, 902. Mrs. Hare argues that the trial court erred when it dismissed her claim for employment discrimination against Paleo Data. Mrs. Hare, however, cites to no law or disputed fact, but merely argues that the “evidence 11scited throughout the Record which is too voluminous to *390 include in this brief is more than sufficient to provide a prima facie claim for gender discrimination and carry her burden.” In essence, Mrs. Hare has failed to brief this issue. Rule 2-12.4, of the Uniform Rules-Courts of Appeal, provides in part: “All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.” Although she mentions and assigns as error the trial court’s dismissal of her employment discrimination claim, Mrs. Hare has abandoned the issue by her failure to brief it. Accordingly, we treat as abandoned Mrs. Hare’s assertion that the trial court erred when it dismissed with prejudice her employment discrimination claim.[5]
CONCLUSION
Finding no reversible error, we affirm the judgment of the trial court that dismissed with prejudice all of Mrs. Hare’s claims against Paleo Data. We have examined Mrs. Hare’s assignments of error and hold that the trial court did not error when it granted Paleo Data’s motion for partial summary judgment and dismissed Mrs. Hare’s compound claim for hostile work environment and constructive discharge. Further, we preclude examination of Mrs. Hare’s assignment of error on the trial court’s dismissal of her gender discrimination claim against Paleo Data because she has failed to brief the issue. We acknowledge, lastly, that Mrs. Hare may still pursue her claims against Mr. Waterman alone for assault, battery, and intentional/negligent infliction of emotional distress.
| ^DECREE
The judgment of the district court in favor of Paleo Data, Inc., and against Ann Hare, dismissing her lawsuit against it with prejudice is affirmed. Each party to bear its own costs on appeal. See La. C.C.P. art. 2164.
AFFIRMED

. We note, however, that Mrs. Hare's claims for assault, battery, and intentional/negligent infliction of emotional distress against Arthur Waterman, her former supervisor, are still active and have yet to be submitted to a trier of fact.

. Micropaleontology is the branch of paleon-togy that studies microfossils. Biostratigra-phy is the branch of stratigraphy that focuses on correlating and assigning relative ages of rock strata by using the fossil assemblages contained within them. The study of various microfossils, and their relative places in the geologic record, has proven to be a very useful resource in petroleum exploration.

. The judgment also dismisses the plaintiff’s gender based employment discrimination claims against Mr. Waterman even though Mr. Waterman's motion for summary judgment sought no such relief. The trial court, however, dismissed these claims against Mr. Waterman without prejudice.on June 4, 2009. Mr. Waterman has not sought review of the denial of his motion for summary judgment. Thus, while the trial court dismissed with prejudice all of Mrs. Hare's claims against Paleo Data, the plaintiff is still pursuing assault, battery, and intentional infliction of emotional distress claims against Mr. Waterman.

. Paleo Data also argues that Mrs. Hare cannot prove that defendants’ actions affected a condition of her employment. That is, the defendants assert that Mrs. Hare cannot establish the constructive discharge portion of her compound claim. Given the dual nature of her claim, we will analyze these arguments in the following section.

. We also note that we would deny Mrs. Hare’s assignment of error on this point were we to entertain her "argument.” Specifically, Mrs. Hare cannot meet her burden of proving that similarly situated employees outside the protected class were treated more favorably because the record shows clearly that her position was filled by another woman — Mrs. Lacoste — and that the Mrs. Lacoste’s prior position was likewise filled by a woman. Indeed, the record shows that under Mr. Waterman’s tenure as president, female Paleo Data employees were given raises, bonuses, and invited to take part in the company’s profit sharing plan. Further, the record indicates that under Mr. Waterman’s tenure, Paleo Data hired women to act as lab workers, lab managers, and paleontologists.