ON APPLICATION FOR REHEARING

PAUL A. BONIN, Judge.
hOur original opinion addressed two separate, but interrelated, judgments that were issued by the district court. First, we addressed Touro Infirmary’s appeal of the judgment rendered against it after a judge trial on the plaintiffs’ principal demand. Second, we addressed the district court’s dismissal with prejudice of Touro Infirmary’s cross-claim against Aggreko, Inc., which was rendered in response to a motion for summary judgment filed by Aggreko. In a split decision, the original three-judge panel affirmed the money judgment against Touro on the principal demand, but reversed the summary judgment on the cross-claim rendered in favor of Aggreko. Following separate applications for rehearing, we denied rehearing on the principal demand and that judgment is now final. See Serou v. Touro Infirmary, 12-0089 (La.App. 4 Cir. 1/9/13), *690 105 So.3d 1068, writ den., 13-0377 (La.4/1/13), 110 So.3d 588.
We, however, granted rehearing on Ag-greko’s application because we were not authorized to render judgment reversing its summary judgment when one judge of the three-judge panel would affirm. See La. Const, art. V § 8 B (requiring that a 12majority of judges concurring is necessary to render judgment “[hjowever, in civil matters only, when a judgment of a district court ... is to be modified or reversed and one judge dissents, the case shall be reargued before a panel of at least five judges, prior to the rendition of judgment”). See also Rule 1-5 of the Uniform Rules — Courts of Appeal. Thus, we convened a five-judge panel and heard re-argument on Touro’s appeal of the summary judgment rendered in favor of Ag-greko.
Upon our de novo review of Aggreko’s motion for summary judgment, we find that there are genuine issues of material fact that preclude the granting of summary judgment at this time in these proceedings. Accordingly, we remand Touro’s cross-claim to the trial court for further proceedings. We explain our decision in more detail below.
I
In its cross-claim, Touro seeks indemnification from Aggreko for money owed to the Serou plaintiffs for the death of Gordon Serou, Sr., a resident of the Specialty Hospital of New Orleans (“SHONO”), located on Touro’s seventh floor, at the time of Hurricane Katrina.[1] Touro’s cross-claim for indemnification arises out of events that occurred near the start of the 2005 Hurricane season. In June 2005, Touro and Aggreko signed the Hurricane Contingency Plan Agreement |S(“HCPA”), which provided that, in exchange for $15,075, Aggreko agreed to guarantee the availability to Touro of a pre-selected generator package in the event of a hurricane striking the New Orleans area.
Specifically, the HCPA called for Aggre-ko to deliver to Touro the following: 1) one 800kW generator; 2) one filled 1,100 gallon external fuel tank; 3) one trailer; and 4) fifty 1.1 ton spot cooling units. The generator was intended to power certain pieces of equipment within the hospital that were components of Touro’s air conditioning system and were used to provide chilled air to the first three floors of Tou-ro’s main building. According to the terms of the contract, Touro was to tender full payment for Aggreko’s services by August 1, 2005. The facts show, however, that Touro’s accounts payable department did not prepare the check until August 25, 2005. Even then, the check was never tendered to Aggreko. The terms of the contract provided, however, that Aggreko was entitled to refuse performance on the HCPA in the event of Touro’s failure to tender timely payment.
*691 Nevertheless, Aggreko delivered the generator package when requested to do so by Touro. Specifically, Touro’s Scott Landry spoke with Aggreko’s Todd Hastings on August 25 and 26, 2005, in order to arrange for the delivery of the generator package, which was delivered on Sunday, August 28, 2005. Touro lost power at approximately 3:00 a.m. on August 29, 2005. The Aggreko generator was activated at that time. While the testimony is somewhat conflicting, it is clear that Tou-ro’s staff began to experience problems with the Aggreko generator almost immediately after it was activated and that it was completely inoperable within four hours of its initial activation.
^Further, the evidence reveals that Ag-greko failed to deliver an external fuel tank that was full of generator fuel. That is to say, Aggreko delivered an external fuel tank, but it was not full of generator fuel. After the hurricane had passed, and the full extent of the damage to the community came to be known, Touro personnel concluded that they needed to obtain additional generator fuel. Subsequently, Touro accepted a delivery of fuel from a tanker truck operated by uniformed military personnel. Unfortunately, that fuel proved to be contaminated, and the contaminated fuel shut down those Touro generators that supplied backup power to life safety circuitry on Touro’s seventh floor— the floor that contained SHONO.
II
Subsequent to the events of August 2005, the Serou plaintiffs filed suit against Touro and SHONO and amended their original petition several times, eventually naming Aggreko as a defendant.[2] Thereafter, Aggreko filed a cross-claim against Touro, who responded by filing a cross-claim for indemnification against Aggreko. Touro’s basis for liability against Aggreko is an indemnification clause found within the HCPA, which provides in part:
Aggreko shall release, indemnify, defend and hold customer harmless from and against any claim, demand, loss, damage, liability, lawsuit, cause of action, judgment, penalty and/or expense ... on account of property damage or loss, or personal injuries (including illness disability or death) resulting from the operation, use or handling of the equipment or services provided hereunder, to the extent caused by the negligence or fault of Aggreko.
Thus, Aggreko agreed to indemnify and hold Touro harmless for damages incurred by third parties that resulted from the negligence or fault of Aggreko.
IbTouto in its cross-claim pled that Ag-greko breached the HCPA in that it failed to provide the amount of fuel referenced in the HCPA, and it failed to provide a functioning and operable generator. Touro further asserted, among other things, that Aggreko’s alleged breach was the legal and proximate cause of plaintiffs’ damages, and sought indemnification for any sums to which it was cast in judgment in connection with the plaintiffs’ demands.
Aggreko first filed a motion for summary judgment on Touro’s cross-claim on June 2, 2011. The district court subsequently denied Aggreko’s motion, finding that there were “questions of fact surrounding whether the HCPA was breached, and if so, by whom and when.” Aggre-ko sought writs of certiorari with this Court, which denied Aggreko’s request for review. Serou v. Touro Infirmary, 11- *692 1023 (La.App. 4 Cir. 7/25/11) (unpub.). Aggreko, thereafter, settled with the plaintiffs and re-urged its motion for summary judgment against Touro.[3] After trial on the merits of the plaintiffs’ claims, wherein the district court assigned a percentage of liability to Touro for Gordon Serou, Sr.’s death, but prior to rendering judgment, the district court granted Aggreko’s re-urged motion for summary judgment and issued a judgment wherein it: 1) granted Aggreko’s motion for summary judgment against Touro; and 2) found specifically that Touro “failed to establish that Aggre-ko, LLC’s conduct was the proximate or legal cause of the Plaintiffs’ injuries.”[4] Touro sought review of this ruling within the context of its appeal of the | (¡district court’s judgment on the plaintiffs’ demands.[5]
In the district court below, Aggreko argued that summary judgment was warranted because: 1) its own failure to properly perform under the contract was, in essence, excused by Touro’s failure to timely make payment under the terms of the contract; and 2) Touro cannot establish that any actions or inactions by Aggre-ko were a legal or proximate cause of the plaintiffs’ injuries. Whatever the merits of Aggreko’s contractual argument, it is clear that the district court granted the motion based upon its finding that Touro cannot meet its burden of proving causation.[6] After reviewing the record and the applicable law, we conclude that the district court erred when it granted Aggreko’s motion for summary judgment and dismissed Tou-ro’s claim for indemnification based upon the presence of genuine issues of material fact within the record before us.
Ill
Appellate courts review the granting of summary judgment de novo under the same criteria governing the district court’s
*693 consideration of whether summary judgment is appropriate. See Hare v. Paleo Data, Inc., 11-1034, p. 9 (La.App. 4 Cir. 4/4/12), 89 So.3d 380, 387. “A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of summary judgment does not dispose of the entire case.” La. C.C.P. art. 966 E. “[A] motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.” La. C.C.P. art. 966 C(l). “The burden of proof remains with the movant.” La. C.C.P. art. 966 C(2). “However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.” Id. “Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.” Id.
Touro asserts that summary judgment on the issue of causation in its cross-claim against Aggreko was improper because of genuine issues of material fact. We agree. The evidence adduced at trial reveals that the generator delivered by Aggreko to Touro in advance of Hurricane Katrina never worked properly and was completely inoperable within four hours of its activation. Further, it was established at trial that Aggreko failed to provide Touro with a full fuel tank, which led Touro’s staff to accept from a military source fuel'that was subsequently found to be contaminated. Similarly, it was eventually discovered that this contaminated fuel led to the shutdown of those Touro generators which were responsible for supplying backup power to SHONO. Likewise, the district court found ^specifically, within the context of the plaintiffs’ demands, that Touro: 1) had a responsibility to SHONO patients to provide and maintain its premises in a safe and working condition; 2) was contractually obligated to provide emergency backup power and air conditioning to SHONO; 3) failed to provide air conditioning to SHO-NO; and 4) failed to provide SHONO and its patients with a safe environment. Additionally, the district court found that Mr. Serou died as a result of heat-related illness, which was caused in part by the foregoing enumerated failings.
Having reviewed the record, we find that there is a genuine issue of fact as to whether Touro’s inability to provide air conditioning and backup power to SHONO during the aftermath of Hurricane Katrina — failings that the district court connected causally to the plaintiffs’ injuries — resulted, in part, from Aggreko’s failure to provide a functioning backup generator and the contracted-for-amount of generator fuel. Specifically, we find that there is a genuine issue of material fact as to-whether Touro personnel would have felt compelled to accept the contaminated fuel — which subsequently rendered inoperative those generators providing backup power to SHONO — had Aggreko provided Touro with the contracted-for-amount of generator fuel. Clearly, with respect to Touro’s and Aggreko’s competing cross-claims, we find that genuine issues of fact remain as to whether Aggreko’s failures to perform under the terms of the HCPA can be causally linked to the plaintiffs’ injuries. Accordingly, we reverse the district court’s judgment that granted Aggreko’s motion for summary judgment on Touro’s cross- *694 claim and remand this matter to the district court. Because we reverse the judgment, those issues raised by Aggreko in its answer to Touro’s appeal are now moot.
InDECREE
The judgment of the district court dismissing with prejudice Touro’s cross-claim against Aggreko (the judgment on the incidental demand) is reversed, and Aggreko’s answer to Touro’s appeal is rendered moot. Touro’s cross-claim is remanded to the district court for proceedings consistent with this opinion.
REVERSED AND REMANDED

. Pursuant to a lease and a services agreement, SHONO leased the seventh floor of Touro's main hospital building located at 1501 Foucher Street, New Orleans. At that location, SHONO operated a long-term acute care facility beginning in 1998 and continuing through the aftermath of Hurricane Katrina. In essence, SHONO operated as a hospital within a hospital. SHONO had its own staff and was responsible for providing the clinical and medical care to its own patients. Touro, however, was contractually obligated to provide certain services, such as electricity, emergency power, and air conditioning, to the SHONO facility. Likewise, Touro also obligated itself to provide certain auxiliary services to SHONO’s patients, such as transportation and therapy; however, the agreement expressly provided that “Specialty Hospital is ultimately responsible for all care rendered to Specialty Hospital’s patients by Touro.” The agreement also required that Touro and SHONO cooperate in preparing for disasters.

. The plaintiffs settled their claims with SHO-NO prior to trial on their main demand against Touro.

. Further, the district court, .upon Aggreko’s uncontested motion, severed Aggreko’s and Touro's competing cross-claims and continued the trial on these matters until after the trial on the plaintiffs main demand.

. Trial on Aggreko’s cross-claim against Tou-ro has yet to commence.

. In its answer, Aggreko asserts the following six assignments of error:
1) The district court erred in failing to specifically rule that Touro breached the Contract, and hence, is not entitled to damages or indemnity.
2) The district court erred in failing to specifically rule that Touro further breached the Contract in "bad faith.”
3) The district court erred in failing to specifically rule that Touro further breached the Contract by failing to notify Aggreko of any problems with the generator.
4) The district court erred in failing to specifically rule that, even if there was a breach on the part of Aggreko, liability is foreclosed because of a "Fortuitous Event” under La. Civ.Code art. 1873.
5) The district court erred in failing to specifically rule that "Payment of a Thing Not Owed” prevents Touro’s recovery, under La. Civ.Code arts. 2298 and 2299.
6) Alternatively, even if indemnity were to become due, the Contract only makes Aggreko potentially liable for indemnity "to the extent caused by the negligence or fault of Aggreko.”

.As noted, Aggreko asserts that its failure to perform under the HCPA was excused by its subsequent discovery that Touro was in breach of the HCPA by failing to timely remit payment. Aggreko cites to no law in support of this position, and we decline to craft such a principle. Regardless, our review of the HCPA indicates that Aggreko’s sole remedy in the event of Touro's non-payment was to refuse to perform under the contract. Aggreko, instead, opted to render performance, which Touro claims was deficient and a causative factor in the plaintiffs' injuries. Moreover, it is clear from the plain wording of the judgment on Aggreko’s motion that the district court granted Aggreko relief after finding that Touro could not meet its burden of proving causation.