| HARRIER ENTERPRISES, LLC | * | NO. 2019-CA-0613 |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| MICHAEL IMBORNONE; DAVID A. WELCH AND THE CITY OF NEW ORLEANS, DEPARTMENT OF FINANCE, BUREAU OF TREASURY, NORMAN FOSTER, DIRECTOR | * | FOURTH CIRCUIT |
| | | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-03248, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
* * * * * *
**JUDGE SANDRA CABRINA JENKINS**
* * * * * *
(Court composed of Judge Edwin A. Lombard, Judge Sandra Cabrina Jenkins, and Judge Tiffany G. Chase)

**CHASE, J., CONCURS**

Chad B. Ham
Attorney at Law
619 Barracks Street
New Orleans, LA 70116

      COUNSEL FOR PLAINTIFF/APPELLEE

Sunni J. LeBeouf, CITY ATTORNEY
Donesia D. Turner, Senior Chief Deputy City Attorney
Churita H. Hansell, Chief Deputy City Attorney
Daniel T. Smith, Assistant City Attorney
Kimberly K. Smith, Assistant City Attorney
1300 Perdido Street
City Hall - Room 5E03
New Orleans, LA 70112

      COUNSEL FOR DEFENDANTS/APPELLANTS

**REVERSED
JANUARY 29, 2020**

In this action to quiet title brought by a tax purchaser, the City of New Orleans appeals the trial court's summary judgment which ordered the cancellation, termination, release, and/or erasure of all statutory impositions due and owing to the City of New Orleans prior to the May 16, 2016 recordation of a tax sale certificate to appellee Harrier Enterprises, LLC ("Harrier") on property located at 624-26 S. Miro in New Orleans (the "Property").

For the reasons that follow, we reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 3, 2018, Harrier filed a Petition to Quiet Title, naming as defendants Michael Imbornone, David A. Welch[1]; and the City of New Orleans Department of Finance, Bureau of Treasury, Norman Foster, Director (collectively, "the City"). Harrier alleged that it is the owner of the Property, which was bid and adjudicated to Harrier by Norman Foster, tax collector, at a 2016 tax sale for delinquent taxes for the years 2013, 2014, and 2015. The tax sale did not seek to

---

[1] Mr. Imbornone and Mr. Welch were two previous owners of record of the Property. On January 10, 2019, the trial court entered a final default quieting title against Mr. Imbornone only.

recover the unpaid 2012 property taxes or an unpaid 2012 lien from a municipal code enforcement administrative adjudication, which appeared on the public tax bill for the Property. Pursuant to the adjudication, the tax collector executed a Tax Sale Certificate to Harrier by act dated May 5, 2016, and recorded in the Orleans Parish Conveyance records. According to Harrier, the City is the holder of various liens and unpaid taxes for periods and years arising prior to, but not included in the May 5, 2016 tax sale. Harrier avers that the City is improperly attempting to collect from Harrier these taxes, liens, and other statutory impositions that were not included in the tax sale to Harrier.

Harrier seeks a judgment in its favor: (1) as the owner of all rights, title, and interest in the Property, confirming and quieting the title, and placed in possession; (2) that the City cannot compel Harrier to pay the property taxes, liens, and other statutory impositions that arise prior to the filing of its Tax Sale Certificate, but which were not included in the tax sale to Harrier; (3) that the quieted title to the Property in favor of Harrier shall cancel, invalidate, and/or extinguish the recorded and unrecorded claims and statutory impositions of the City for the years prior to the filing of Harrier's tax sale certificate, but not included in the tax sale to Harrier.

On February 5, 2019, Harrier filed a Motion for Summary Judgment against the City seeking the relief sought in its Petition to Quiet Title, i.e., cancellation of outstanding unpaid property taxes on the Property that predate and were not included in the tax sale. In opposition to the Motion for Summary Judgment, the City argued that cancellation of unpaid taxes is prohibited by law.

On March 22, 2019, the trial court conducted a hearing on Harrier's Motion for Summary Judgment. On April 5, 2019, the trial court signed a judgment granting Harrier's Motion for Summary Judgment, and ordering the cancellation,

2

termination, release and/or erasure of all statutory impositions due and owing to the City from prior to the May 16, 2016 recordation of the Tax Sale Certificate to Harrier on the Property.

The City appealed the trial court's April 5, 2019 judgment.

## DISCUSSION

The City lists a single issue for review: Whether La. R.S. 47:2157 authorizes a court to cancel from property records prior unpaid ad valorem taxes and administrative adjudication liens that were not included in or satisfied by the tax sale.[2] The answer is no.

**Standard of Review**

We apply a *de novo* standard of review in examining a trial court's ruling on summary judgment. *Hare v. Paleo Data, Inc.*, 11-1034, p. 9 (La. App. 4 Cir. 4/4/12), 89 So.3d 380, 387. Accordingly, we use the same criteria that govern a trial court's consideration of whether summary judgment is appropriate. *Id.*

"[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

**Burden of Proof**

---

[2] The City also argues that the trial court erred by applying La. R.S. 13:2576 to transfer the *in rem* ad valorem tax obligation from the current property owner to the prior tax debtor after a tax sale under Title 47. Although the trial court mentioned this at the summary judgment hearing, there is no reference to either La. R.S. 13:2576 or this issue in the trial court's final judgment. A court of appeal reviews judgments, not reasons for judgment. *Latter & Blum, Inc. v. Ditta*, 17-0116, 17-0117, p. 13 (La. App. 4 Cir. 6/22/17), 223 So.3d 54, 62 n. 7. Furthermore, La. R.S. 13:2576 applies to judicial sales, not tax sales ("[a]ny past due and unpaid ad valorem taxes remaining after applying the proceeds of the judicial sale as provided by paragraph (a)(5) of this Section shall become, be, and remain the personal obligation of the tax debtor").

3

La. C.C.P. art. 966(D)(1) governs the mover's burden on a motion for summary judgment:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

**Title 47 and the Louisiana Constitution**

The genesis of this matter is Title 47 of the Louisiana Revised Statutes. Clearly, the legislature did not intend for Title 47 to authorize the courts to cancel property taxes. La. R.S. 47:2134(A) states:

> No court of this state shall issue any process to restrain, or render any decision that has the effect of impeding, the collection of an ad valorem tax imposed by any political subdivision, under authority granted to it by the legislature or by the constitution.

The State Constitution also affords special protection to the collection of ad valorem taxes by political subdivisions. Article VII, Section 15 of the Louisiana Constitution provides that:

> [t]he legislature shall have no power to release, extinguish, or authorize the releasing or extinguishing of any indebtedness, liability, or obligation of a corporation or individual to the state, a parish, or a municipality.

Article VII, Section 16 of the Constitution states that "[t]axes, **except real property taxes**, and licenses shall prescribe in three years." (Emphasis added.) *See also Bilbe v. Foster*, 15-0302, p. 8 (La. App. 4 Cir. 9/9/15), 176 So.3d 542, 547 ("The right to proceed to a tax sale expires three years after the last day of the year in which the taxes were due, however, property taxes do not prescribe.").

4

"To begin the deprivation process, the legislature enacted La. R.S. 47:2157, which is a rather new addition to the process." Denis W. Barry, Jr., *Louisiana Tax Sales: A Mystery Unraveled*, 41 S.U. L. REV. 345, 353 (Spring 2014). By the filing of an affidavit with the recorder of mortgages, "[i]t is designed to evidence as a matter of public record the conversion of tax sale title to ownership." La. R.S. 47:2157, Rev. Cmt. (a).[3]

The City contends that the trial court misinterpreted the provisions of La. R.S. 47:2157 when it concluded that Louisiana law authorizes a court to cancel property taxes and other statutory impositions imposed prior to the tax sale but not included in the tax sale itself. The City argues that La. R.S. 47:2157(D)-(F) allows the tax sale purchaser to have liens, mortgages, etc. on the property cancelled, but the only governmental statutory impositions that may be cancelled are those that were included in and satisfied by the tax sale. We agree.

La. R.S. 47:2157(E) states:

The filing of the affidavit provided in subsection D of this Section with the recorder of mortgages of the parish in which the property is located shall operate as a cancellation, termination, release, or erasure of record of all statutory impositions due and owing to the political subdivision prior to the recordation of the tax sale certificate, and of all interests, liens, mortgages, privileges and other encumbrances recorded against the property and listed in the affidavit.

Although La. R.S. 47:2157(E) provides that filing the affidavit with the recorder of mortgages cancels the statutory impositions imposed by the political subdivision that made the tax sale and "all" other non-governmental "interests, liens, mortgages, privileges and other encumbrances," the 2008 legislative revision comment makes clear that the **cancellation of statutory impositions only applies**

---

[3] "The next step or safeguard a tax purchaser must take is to file suit against the tax-sale parties whose interest the petitioner seeks to terminate." Barry, *supra* at 353-54.

**to those that were included in the price of the tax sale**. The 2008 Revision Comment to La. R.S. 47:2157(E), Rev. Cmt. (f), states:[4]

> Subsection E provides that the filing of the affidavit cancels all statutory impositions due prior to the recordation of the tax sale certificate **since the purchase price paid was the amount of those statutory impositions of the taxing authority conducting the tax sales.** It does not, however, cancel statutory impositions of other taxing districts which conduct separate tax sales. See R.S. 47:2160. Other governmental liens, such as condemnation liens, weed liens, etc., that were not included as statutory impositions are not cancelled. (Emphasis added.]

We agree with the City that the purpose of the provision allowing for the cancellation of statutory impositions by affidavit was to eliminate only those prior encumbrances that were actually satisfied through the proceeds of the tax sale. In this case, the 2012 property taxes and the 2012 administrative adjudication lien were imposed prior to the tax sale, but they were not included as part of the tax sale and were not satisfied by the price of the sale. Accordingly, we find that the trial court erred as a matter of law in granting Harrier's Motion for Summary Judgment, and canceling the unpaid statutory impositions.

## CONCLUSION

For the reasons discussed above, we reverse the trial court's April 5, 2019 judgment granting summary judgment in favor of Harrier and against the City.

## REVERSED

---

[4] Although the Official Revision Comments are not the law, in this case they are helpful in determining legislative intent. *Tracie F. v. Francisco D.*, 15-1812, p. 8 (La. 3/15/16), 188 So.3d 231, 238.

6