Doris **PALMER**

v.

**HAMP'S CONSTRUCTION, L.L.C., et al**

Doris **Palmer**

v.

**Hamp's Construction, LLC, et al.**

NO. 2016–CA–0381, NO. 2015–C–1306

Court of Appeal of Louisiana, Fourth Circuit.

November 30, 2016

Mark A. Delphin, Arthur J. O'Keefe, DELPHIN LAW OFFICES, 626 Broad Street, Lake Charles, LA 70601, COUNSEL FOR PLAINTIFF/APPELLANT, DORIS PALMER

James S. Thompson, Michele L. Trowbridge Barreca, PORTEOUS, HAINKEL & JOHNSON, 704 Carondelet Street, New Orleans, LA 70130, COUNSEL FOR DEFENDANT/APPELLEE, HAMP'S CONSTRUCTION, LLC.

John B. Fox, 4240 Canal St., New Orleans, LA 70119, COUNSEL FOR INTERVENOR APPELLEE

(Court composed of Judge Dennis R. Bagneris, Sr., Judge Roland L. Belsome, Judge Rosemary Ledet)

Judge Dennis R. Bagneris, Sr.

Relators-defendants, Eddie Lohmann, Lohmann Fencing, and AG Security Insurance Company, filed a writ application[1] with this Court on December 4, 2015, seeking relief from the denial of exceptions of prescription in favor of respondent-plaintiff, Doris Palmer. Thereafter, appellant-plaintiff, Doris Palmer, lodged this appeal on April 18, 2016, alleging that the trial court erred in granting defendant's, Hamp's Construction, LLC's ("Hamp's"), motion for summary judgment and in denying her motion for new trial. On April 22, 2016, this Court consolidated the pending writ application, No. 2015-C-1306, with the instant appeal. Concerning Ms. Palmer's appeal, we find that the trial court erred in granting summary judgment as we find there are genuine issues of material fact regarding the degree of control Hamp's retained and/or exercised over its sub-contractor, Lohmann Fencing, and the work performed pursuant to Hamp's contract with the Board of Commissioners of the Port of New Orleans. Concerning the defendants' [Eddie Lohmann, Lohmann Fencing, and AG Security Insurance Company] writ application, we grant review of the writ application but deny relief as we find no error in the trial court's judgment, which denied defendants' exceptions of prescription.

## PROCEDURAL HISTORY AND FACTS

On September 20, 2007, Hamp's entered into a contract with the Board of Commissioners of the Port of New Orleans ("the Port of New Orleans"), to remove and replace an existing fence and gate components. On September 1, 2009, while working for the Port of New Orleans, Ms. Palmer alleged that she fell into a circular fence pole hole, approximately three feet deep, while picking up trash adjacent to a new fence on her employer's property. On July 15, 2010, Ms. Palmer filed a petition for damages naming Hamp's, and its insurer, The Gray Insurance Company, as defendants. The petition alleged that the Port of New Orleans entered into a contract with Hamp's to construct a fence and that Hamp's breached a contractual duty to fill holes created by the removal of the old fence posts.

On September 9, 2010, Hamp's filed an answer to Ms. Palmer's petition, and a third party demand against Lohmann

---

1. Although relators' writ, 2015-C-1306, was filed on December 4, 2015, the writ application was supplemented on December 21, 2015, with a signed copy of the December 9, 2015 judgment.

Fencing, a foreign corporation. In the third party demand, Hamp's alleged that it entered into a subcontract on December 15, 2007, with Lohmann Fencing, and that pursuant thereto, Lohmann Fencing agreed to add Hamp's as an additional insured to its general liability insurance policy, and to hold Hamp's harmless and indemnify Hamp's.

On February 16, 2011, Hamp's filed its first supplemental and amending third party demand, adding Lohmann Fencing's insurer, AG Security Insurance Company ("AG Security"), as a third party defendant. Hamp's also alleged that Lohmann Fencing breached its contract by not adding Hamp's as an additional insured.

On July 10, 2013, the trial court granted Ms. Palmer's motion to substitute counsel, which ordered John B. Fox to withdraw and enrolled Mark A. Delphin and Arthur J. O'Keefe as Ms. Palmer's new counsel of record. On July 12, 2013, John Fox & Associates, L.L.C., plaintiff in intervention, filed a petition of intervention, which the trial court granted.

On January 27, 2014, Ms. Palmer filed a motion to amend her petition, seeking to add Eddie Lohmann, Lohmann Fencing, and AG Security as defendants. Ms. Palmer argued that Lohmann Fencing and AG Security already knew about, and were participating in, the suit as third party defendants. Further, Ms. Palmer noted that Hamp's, Eddie Lohmann, Lohmann Fencing, and AG Security were all represented by the same counsel. After hearing the motion for leave to amend the original petition, the trial court granted the motion in part to allow addition of Lohmann Fencing and AG Security as defendants, and denied the motion in part, preventing the addition of Eddie Lohmann as a defendant. However, on November 26, 2014, this Court reversed the trial court's judgment in part, finding that defendant Eddie Loh-

mann should also be joined, under La. C.C.P. art. 1151, as a party defendant.

On April 25, 2014, Hamp's filed a motion for summary judgment arguing that there are no genuine issues of material fact in dispute and that it, as the general contractor, is not liable for the negligence of Lohmann Fencing, the independent/subcontractor. In support of its motion for summary judgment, Hamp's attached the following as exhibits: (1) the affidavit of Charlie Hampton, the owner and operator of Hamp's; (2) the September 20, 2007, contract between the Port of New Orleans and Hamp's; and (3) the December 15, 2007, subcontract between Hamp's and Lohmann Fencing.

On December 8, 2014, Ms. Palmer filed a second amending and supplemental petition to include Eddie Lohmann as an additional defendant as well as alleging that the defendants, Hamp's, Eddie Lohmann, and Lohmann Fencing "jointly, severally and *in solido* undertook the specific duty and responsibility of removing the fence post" and that "[a]t all material times herein, it was foreseeable to defendants, and defendants knew, that the existence of the hole created by defendants' removal of the fence post constituted a dangerous and hazardous condition to the employees of the Board of Commissioners for the Port of New Orleans as well as to the public."

Thereafter, Hamp's, Eddie Lohmann, Lohmann Fencing, and AG Security filed various exceptions of prescription, arguing that Ms. Palmer's motion for leave to amend her petition in January 27, 2014, to name them as additional defendants, was filed over three years past the prescriptive period. On August 17, 2015, the defendants jointly filed a supplemental memorandum in support of their exception of prescription originally filed on January 9, 2015, and argued that (1) Hamp's/Gray Insurance Co., and Eddie Lohmann/Lohmann

Fencing/AG Security, are not solidary obligors; (2) Ms. Palmer's accident occurred on September 1, 2009, and only Hamp's was sued on July 15, 2010; (3) Eddie Lohmann/Lohmann Fencing did not get served with Hamp's third party demand until September 25, 2010, over a year after the incident; (4) Ms. Palmer did not file her first amended petition against Lohmann Fencing and AG Security until November 2014; and (5) Ms. Palmer did not file her second amended petition naming Eddie Lohmann until December 2014. Thus, Eddie Lohmann/Lohmann Fencing/AG Security argue that Ms. Palmer's claims against them have prescribed because they are not solidary obligors with Hamp's and, the timely suit against Hamp's does not interrupt prescription as to Eddie Lohmann/Lohmann Fencing/AG Security.

On August 17, 2015, Hamp's filed a supplemental memorandum in support of its motion for summary judgment that was originally filed on April 25, 2014, and attached, as additional exhibits, the depositions of Charlie Hampton and Eddie Lohmann, the sole operator of Lohmann Fencing. In its supplemental memorandum, Hamp's argues that the additional exhibits reflect that: (1) Hamp's did not perform any of the fencing work and did not supervise the work of Lohmann Fencing; (2) Hamp's machinery and equipment were not used by Lohmann Fencing in performing the fencing work; and (3) Hamp's had no knowledge as to what equipment was used by Lohmann Fencing, or what work was performed on a daily basis by Lohmann Fencing, or who supervised Lohmann Fencing's workers. Thus, Hamp's alleges that because it had no operative control over Lohmann Fencing,

it cannot be liable for Lohmann Fencing's negligence.

On October 20, 2015, Ms. Palmer filed an opposition to Hamp's motion for summary judgment arguing that: (1) Hamp's employees testified that Hamp's was the contractor performing the fence work for the Port of Orleans; (2) the contract between Hamp's and the Port of New Orleans is legally binding; (3) the subcontract entered into by Hamp's and Lohmann Fencing is not legally binding because (a) Hamp's was prohibited from subcontracting the entire job to Lohmann Fencing to perform, (b) Hamp's failed to advise the Port of New Orleans of its intent to enter into a subcontract with Lohmann Fencing, and (c) Lohmann Fencing is prohibited from being a subcontractor for the Port of Orleans work because it is not a licensed Louisiana contractor and did not post a performance bond; and (4) Hamp's maintained operational control over the subcontractor's work, and was liable for the negligence of a subcontractor. In support of her opposition to summary judgment, Ms. Palmer attached the following exhibits: (1) the September 20, 2007, contract between the Port of New Orleans and Hamp's; (2) the deposition of Eddie Lohmann; (3) the affidavit of William James Meliet, the Representative and Manager of Construction Services for the Port of Orleans; (4) the deposition of John Bonomo; and (5) the minutes of the February 12, 2008, and April 2, 2008, construction meetings prepared by John Bonomo.

After a hearing on November 6, 2015, the trial court denied Eddie Lohmann, Lohmann Fencing, and AG Security's exceptions of prescription, but granted Hamp's motion for summary judgment.[2]

---

**2.** The written judgment denying defendants' exceptions of prescription was signed on De-

cember 9, 2015, and the written judgment

On December 4, 2015, Eddie Lohmann, Lohmann Fencing; and AG Security filed an application for supervisory review with this Court to review the trial court's denial of the exceptions of prescription. Thereafter, on February 2, 2016, the trial court denied Ms. Palmer's motion for new trial. In light of the trial court's final judgment dismissing Hamp's as a defendant, this Court, on its own motion, consolidated the writ with Ms. Palmer's appeal.

## DISCUSSION

### APPEAL, 2016-CA-0381

The first issue this Court will address is whether the trial court erred in finding no culpability on the part of Hamp's and in granting summary judgment in favor of Hamp's, dismissing it from the lawsuit with prejudice. Appellate courts review the grant or denial of a motion for summary judgment *de novo*, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. *Hare v. Paleo Data, Inc.*, 11–1034, p. 9 (La.App. 4 Cir. 4/4/12), 89 So.3d 380, 387. A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2). A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93–2512, p. 27 (La.

7/5/94), 639 So.2d 730, 751. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Id.*

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). Summary judgments are favored, and the summary judgment procedure shall be construed to accomplish those ends. *Id.* La. C.C.P. art. 966(C)(2) provides that where, as in the instant case, the party moving for summary judgment will not bear the burden of proof at trial, their burden does not require them to negate all essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law.[3]

In this case, there is no dispute that an employment contract existed between Hamp's and the Port of New Orleans, and a subcontract existed between Hamp's and Eddie Lohmann/Lohmann Fencing, for the removal and replacement of the fence on the property of the Port of Orleans. The contract between Hamp's and the Port of New Orleans specifically stated, in pertinent part:

ARTICLE 17—PROTECTION OF WORK AND PROPERTY

granting Hamp's motion for summary judgment was signed on November 23, 2015.

3. This language is from La. C.C.P. art. 966 as it existed at the time the motion for summary judgment in this matter was filed and heard, prior to the article's amendment that became effective on January 1, 2016.

Contractor [Hamp's] shall ...take all other necessary precautions for the protection and safety of the work and the public against personal injury (including death) and property damage.

ARTICLE 18—SUPERINTENDENCE AND SUPERVISION

Contractor shall keep on the site of the work project, at all times during its progress, a competent superintendent and any necessary assistant, all satisfactory to Engineer.[4] Said superintendent shall have full authority from Contractor to carry out all orders given by Engineer, and shall exercise active supervision of all work performed under this contract, including work subcontracted, and shall not be transferred from this project to other work (even partially) without the approval of Engineer.

ARTICLE 33—ASSIGMENT

**Contractor shall not assign this contract or subcontract it as a whole or contrary to the provisions of ARTICLE 46, [stated below] without the prior written consent of Board,** and only when Engineer of Board determines that it would be *to the advantage of the Board.* (Emphasis added)

ARTICLE 36—SUBCONTRACTORS

Contractor shall, as soon as practicable after the signing of the contract, **notify Engineer in writing of the names of subcontractors proposed for the work** and shall not employ any that Engineer may, within ten (10) calendar days, object to as incompetent or unfit because of unsatisfactory previous performance on contracts for Board or for others. Such unsatisfactory performance will constitute the only cause for rejection by Engineer of a subcontractor proposed by Contractor for employment on the project **except that sub-contractors performing work valued at $50,000 or more shall be licensed in accordance with La. R.S. 37:2163.** (Emphasis added)

**Contractor shall be fully responsible to Board for the acts and omissions of his subcontractors and of persons either directly employed by them, as he is for the acts and omissions of persons directly employed by him.** (Emphasis added)

ARTICLE 46—PERFORMANCE OF WORK BY CONTRACTOR

**Contractor shall perform** at job site, in his own shop or in his own plant or yard, and with his own organization, as integral part of the **construction work equivalent to at least sixty percent (60%) of the total amount of work to be performed under the contract.** If, during the progress of the work hereunder, Contractor requests a reduction in such percentage, and Engineer determines that it would be to the advantage of the Board, **the percentage of work required to be performed by Contractor may be reduced, provided written approval of such reduction is obtained in advance by Contractor from the Director of Construction.** (Emphasis added)

The subcontract between Hamp's and Lohmann Fencing specifically stated that the "scope of work in general includes to furnish under one contract all superintendence, labor, every description, to perform work provided required to remove and

---

4. According to the contract, Engineer refers "to the Owner [the Port of Orleans] acting personally or through the Manager of Construction Service of Board, an assistant to said, consulting engineer or architect duly authorized for such act by Engineer."

replace fencing and gate components." The subcontract provided for a lump sum price, as well as the following pertinent conditions:

> (a) Subcontractor agrees to employ sufficient men and materials to do the work timely, properly and in such manner as not to delay Contractor or other subcontractors. Subcontractor agrees to coordinate its work properly with other Subcontractors and the Contractor, and maintain a qualified and capable job site supervisor in attendance at all times when work is in progress.
>
> (b)Subcontractor is fully familiar with the job site, working conditions, and the plans and specifications and general conditions of the contract between Owner [the Port of Orleans] and Contractor [Hamp's], and Subcontractor binds itself to Contractor, in respect to the subcontract work, as Contractor is bound to the Owner. (Emphasis added)
>
> (c) Subcontractor shall purchase and maintain insurance, ... to protect Contractor and Owner from claims which may arise out of or result from operations of subcontractor or any Sub–Subcontractor under this subcontract, whether such claims arise during the subcontract performance or subsequent to completion of the subcontract....

The issue before us is whether Eddie Lohmann/Lohmann Fencing is a mere servant under this subcontract with Hamp's, or whether it is an independent contractor. Louisiana law governing the vicarious liability of an employer generally provides that employers are answerable for the damage occasioned by their employees in the exercise of the functions in which they are employed. La. Civ. Code art. 2320. For an employer to be held liable for the actions of an employee under Article 2320, the plaintiffs must show that an employer-employee relationship existed and that the tortious act was committed within the scope and during the course of employment. *Richard v. Hall*, 03–1488, p. 5 (La. 4/23/04), 874 So.2d 131, 137. However, a well-established general rule under Louisiana law is that an employer is not liable for the torts committed by an individual who is an independent contractor in the course of performing his contractual duties. *Hillman v. Comm–Care, Inc.*, 01–1140, p. 6 (La. 1/15/02), 805 So.2d 1157, 1161. Yet, there is an equally well-established exception to this rule in that an employer may be liable if it maintains the right to supervise or control the activity in question. *Steinfelds v. Villarubia*, 10–0975, p. 7 (La.App. 4 Cir. 12/15/10), 53 So.3d 1275, 1280.

It is important to note that the difference between an employee and an independent contractor is a factual determination to be decided on a case-by-case basis. *Tower Credit, Inc. v. Carpenter*, 01–2875, p. 6 (La. 9/4/02), 825 So.2d 1125, 1129. The distinction between employment and independent contractor relationships was examined in *Hickman v. Southern Pacific Transport Company*, 262 La. 102, 117, 262 So.2d 385, 390–91 (1972), as follows:

> It is well understood by the courts of this State that the term independent contractor connotes a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants. The relationship presupposes a contract between the parties, the independent nature of the contractor's business and the nonexclusive means the contractor may employ in

accomplishing the work. Moreover, it should appear that the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered. It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.

The law further recognizes that inquiry to determine whether a relationship is that of independent contractor or that of mere servant requires, among other factors, the [14]application of the principal test: the control over the work reserved by the employer. In applying this test it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists. (Citations omitted).

Although the parties may have designated Eddie Lohmann/Lohmann Fencing as an independent contractor in the contract, this designation is not controlling on the rights of third persons. Rather, the rights of third persons are determined by the substance of the contractual relationship, rather than the title of it. *See Monsanto Co. v. St. Charles Parish School Bd.*, 94–2145, pp. 5–6 (La. 2/20/95), 650 So.2d 753, 756–57.

■ After reviewing the employment contracts, as well as the affidavit of Mr. Meliet, and the depositions of Eddie Lohmann and John Bonomo, we find genuine issues of material fact exist as to whether Eddie Lohmann/Lohmann Fencing is an employee or independent contractor of Hamp's. Specifically, Mr. Meliet [the Manager of Construction Services for the Port of Orleans] [5] stated in his affidavit that the subcontract between Hamp's and Lohmann Fencing was invalid because: (1) Hamp's "never notified 'the Board' or Affiant of its intention to hire Eddie Lohmann, Lohmann Fencing or any contractor;" (2) Hamp's "never allowed 'the Board' or Affiant the opportunity to object to Eddie Lohamm or Lohmann Fencing becoming a subcontractor;" (3) " 'the Board' never gave Hamps the permission to hire Eddie Lohamnn or Lohmann Fencing" and (4) Eddie Lohmann/Lohmann Fencing could not be a subcontractor performing "Board work" because it was neither licensed in the State of Louisiana under La. R.S. 37:2163, nor did it post a [15]performance bond for the contractual work. Further, Mr. Meliet stated that even "[i]f there was a subcontract between 'Hamps' and Eddie Lohmann or Lohamnn Fencing, 'Hamps' remains in operational control of the workplace" and that " 'the Board' as well as Affiant relied upon 'Hamps' to actively supervise the fence removal and replacement regardless of whether that work was being performed by 'Hamps' own employees or those of a subcontractor."

Eddie Lohmann also testified that he was not licensed in the state of Louisiana when he entered into the subcontract with Hamp's, and that he had never worked in Louisiana before this job. Eddie Lohmann further testified in his deposition that he was required to abide by the terms and conditions of the contract between the Port of Orleans and Hamp, a contract which required the "[c]ontractor [Hamp's] to carry out all orders given by Engineer,

---

**5.** Mr. Meliet is also known as the "Engineer" at all material times during the Contract between the Port of Orleans and Hamp's.

and shall exercise active supervision of all work performed under this contract, including work subcontracted, and shall not be transferred from this project to other work (even partially) without the approval of Engineer."

Because we find that the evidence in the record fails to resolve the factual question of whether Hamp's had the right to supervise or control the work performed by Lohmann Fencing when removing and replacing the fence, we find it was error for the trial court to grant summary judgment in favor of Hamp's and dismiss, with prejudice, all claims against it.

### WRIT, 2015–C–1306

■ The second issue we will address is whether the trial court erred in denying defendants', Eddie Lohmann/Lohamnn Fencing and AG Security's, exceptions of prescription. Eddie Lohmann/Lohmann Fencing and AG Security argue that Ms. Palmer added them as defendants three years past the uninterrupted prescriptive period and that they failed to receive sufficient notice of Ms. Palmer's claim. Ms. Palmer asserts that prescription was interrupted after she timely filed suit against Hamp's. Specifically, she argues that Hamp's, Eddie Lohmann/Lohmann Fencing, and AG Security are joint tortfeasors and solidary obligors because both parties were tasked with filling the hole that she allegedly fell in and injured herself.

■ In reviewing a peremptory exception of prescription, this Court should not disturb the findings of the trial court unless they are clearly wrong. *Brumfield v. McElwee*, 07–0548, pp. 3–4 (La.App. 4 Cir. 1/16/08), 976 So.2d 234, 238. The issue to be decided by an appellate court in reviewing an exception of prescription is not whether the trial court was right or wrong, but whether the fact finder's con-

clusion was reasonable. *Brumfield*, 07–0548, p. 4, 976 So.2d at 238. Further, the Louisiana Supreme Court recently stated that "prescriptive statutes are strictly construed in favor of maintaining a plaintiff's cause of action" and that "[a]bsent clear, contrary legislative intent, 'prescriptive statutes which can be given more than one reasonable interpretation should be construed against the party claiming prescription.'" *Correro v. Ferrer*, 16–0861 (La. 10/28/16), —— So.3d ——, 2016 WL 6311881.[6]

A lawsuit for personal injury is subject to a one-year period of liberative prescription, following the date of accident, pursuant to La. C.C. art. 3492. According to Ms. Palmer's petition, the accident that gave rise to her injuries occurred on September 1, 2009. By a supplemental and amending petition, Ms. Palmer named Eddie Lohmann, Lohmann Fencing, and AG Security as defendants on January 27, 2014, more than one year later. As a result, the supplemental and amending petition on its face revealed that prescription had run; and it is Ms. Palmer's burden to demonstrate why her claims have not prescribed. *Denoux v. Vessel Management Services, Inc.*, 07–2143, pp. 5–6 (La. 5/21/08), 983 So.2d 84, 88–89. In this case, Ms. Palmer relies upon the theory of interruption to argue that her claims have not prescribed.

Prescription is interrupted by the filing of suit in a court of competent jurisdiction and venue. La. C.C. art. 3462. The interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors. La. C.C. art. 2324(C). Similarly, La. C.C. art. 1799 provides: "[t]he interruption of prescription against one solidary obligor is effective against all solidary obligors." The Civil Code restates this provision in La. C.C. art. 3503: "[w]hen pre-

**6.** (citations omitted).

scription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors." An interruption of prescription resulting from the filing of a suit in a competent court and in the proper venue within the prescriptive period continues as long as the suit is pending. La. C.C. art. 3463. The interruption is considered never to have occurred if the plaintiff abandons, voluntarily dismisses the action at any time either before the defendant has made an appearance of record or thereafter, or fails to prosecute the suit at trial. La. C.C. art. 3463.

By commencing a tort lawsuit against and effectuating service upon Hamp's on July 15, 2010, within the prescriptive period of one year, Ms. Palmer successfully interrupted prescription as to the alleged joint tortfeasors, Eddie Lohmann/Lohmann Fencing and its insurer, AG Security. Thus, we find the trial court properly denied the defendants' exceptions of prescription.

For the above reasons, we hereby reverse the trial court judgment that granted summary judgment in favor of Hamp's Construction, LLC, and we remand this matter for further proceedings. Further, we hereby grant Eddie Lohmann, Lohmann Fencing, and AG Security's writ application but deny relief as we find that the trial court properly denied the exceptions of prescription.

**APPEAL: REVERSED AND REMANDED.**

**WRIT APPLICATION: GRANTED; RELIEF DENIED.**

BELSOME, J., CONCURS IN THE RESULT